UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODS CAPITAL LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>   vs.<br><br>JA SOLAR HOLDINGS CO., LTD., BAOFANG JIN, and SHAOHUA JIA,<br><br>                  Defendants. | Case No. 1:18-cv-12083-ALC |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR A PARTIAL LIFTING OF THE PSLRA DISCOVERY STAY PURSUANT TO 15 U.S.C. § 78u-4(b)(3)(B)**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. FACTUAL BACKGROUND & PROCEDURAL HISTORY ......................................... 3

    A. Defendant Jin and the Buyer Group Take JA Private ............................................ 4

    B. JA's Post-Merger Activity ...................................................................................... 5

    C. Procedural History ................................................................................................. 7

III. DISCUSSION ................................................................................................................... 8

    A. Legal Standard ....................................................................................................... 8

    B. The Court Should Partially Lift the PSLRA Discovery Stay to Prevent Undue Prejudice to Lead Plaintiffs in Pursuing Well-Pleaded Claims ................. 10

        1. Lead Plaintiffs' Motion is Consistent with the Purposes Underlying the PSLRA Discovery Stay ........................................................................ 10

        2. Lead Plaintiffs Have Suffered and Will Continue to Suffer Undue Prejudice as a Result of the PSLRA Discovery Stay ............................... 11

    C. Lead Plaintiffs Intend to Request Specific Documents From Defendants ........... 13

IV. CONCLUSION ............................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adler v. Solar Power, Inc.*,
   2019 WL 2210661 (S.D.N.Y. May 22, 2019) ........................................................................12

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
   2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009)....................................................................9, 11

*In re Comdisco Sec. Litig.*,
   166 F. Supp. 2d 1260 (N.D. Ill. 2001) ..............................................................................12, 14

*Daniels v. National R.R. Passenger Corp.*,
   110 F.R.D. 160 (S.D.N.Y. 1986) ........................................................................................ 2-3

*Faulkner v. Verizon Commc'ns, Inc.*,
   156 F. Supp. 2d 384 (S.D.N.Y. 2001)....................................................................................11

*Gruber v. Gilbertson*,
   2017 WL 3891701 (S.D.N.Y. Sept. 5, 2017).....................................................................9, 13

*In re LeBranche Sec. Litig.*,
   333 F. Supp. 2d 178 (S.D.N.Y. 2004)........................................................................8, 10, 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   2004 WL 305601 (S.D.N.Y. Feb. 18, 2004)............................................................................8

*In re Metro. Sec. Litig.*,
   2005 WL 940898 (E.D. Wash. Mar. 31, 2005).....................................................................12

*Mori v. Saito*,
   802 F. Supp. 2d 520 (S.D.N.Y. 2011)...............................................................................9, 13

*Nature's Plus Nordic A/S v. Natural Organics, Inc.*,
   274 F.R.D. 437 (E.D.N.Y. 2011) ..........................................................................................14

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   220 F.R.D. 246 (D. Md. 2004)..............................................................................................11

*In re Smith Barney Transfer Agent Litig.*,
   2006 WL 1738078 (S.D.N.Y. June 26, 2006) ......................................................................11

*Taft v. Ackerman*,
   2005 WL 850916 (S.D.N.Y. Apr. 13, 2005).........................................................................12

*Texas Pac. Land Tr. v. Oliver*,
2019 WL 3387767 (N.D. Tex. July 26, 2019) ............................................................ 12

*Vacold LLC v. Cerami*,
2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ............................................................ 11, 13

*In re Vivendi Universal, S.A. Sec. Litig.*,
381 F. Supp. 2d 129 (S.D.N.Y. 2003) ............................................................ 8

*In re Worldcom, Inc. Sec. Litig.*,
234 F. Supp. 2d 301 (S.D.N.Y. 2002) ............................................................ 8, 10, 13

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B) ............................................................ 1, 8

Co-Lead Plaintiffs in this action, ODS Capital LLC and Altimeo Asset Management (together "Lead Plaintiffs"), submit the following Memorandum of Law in Support of Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Discovery Stay Pursuant to 15 U.S.C. § 78u-4(b)(3)(B).  For the reasons stated herein, Lead Plaintiffs' motion should be granted and the Court should partially lift the discovery stay mandated by the Private Securities Litigation Act of 1995 ("PSLRA") to allow Lead Plaintiffs particularized and limited discovery into the specific categories detailed below, from Defendants JA Solar Holdings Co., Ltd. ("JA" or the "Company"), and Baofang Jin ("Jin") (collectively "Defendants").

## I. PRELIMINARY STATEMENT

Lead Plaintiffs represent a class of investors that lost hundreds of millions of dollars as a result of Defendants' fraudulent representations and omissions made while taking JA private.  At the Court's suggestion, on January 13, 2020, the parties participated in a full-day mediation with a private mediator in an attempt to settle these claims, but were unable to resolve the matter.  Pursuant to the PSLRA's stay of discovery, the parties have not exchanged any discovery yet.  One area of concern for Lead Plaintiffs is the status and ownership of JA's assets and responsibility for its liabilities, an issue that goes to the heart of the collectability of any judgment in this case.

Lead Plaintiffs have determined, through a review of a November 6, 2019, transaction report only publicly available in Chinese, that JA and Defendant Jin have transferred JA's assets at least twice since taking the Company private in July 2018.  Declaration of Carol C. Villegas in Support of Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Stay Pursuant to 15 U.S.C. § 78u-4(b)(3)(B) at ¶5 (hereinafter Villegas Decl. ¶__).  Counsel for Defendants have issued a memo to parties in China grossly underestimating the risk stemming from this litigation, which if tried to judgment could result in hundreds of millions of dollars of liability.  Relatedly,

Defendant Jin has apparently issued one or more indemnities for liability related to this litigation. However, without discovery, Lead Plaintiffs cannot determine with any confidence who or which entity is ultimately responsible for paying any judgment stemming from this suit, whether that person or entity has maneuvered to render themselves "judgment proof," and if they will be able to satisfy a potential judgment of hundreds of millions of dollars.

In deciding whether to lift the PSLRA discovery stay before a motion to dismiss has been decided, courts consider whether a party will suffer "undue prejudice" without the requested materials. It is well-accepted that undue prejudice can arise where there are concerns related to the ability to enforce or collect a judgment.

As a result of the PSLRA discovery stay and Defendants' post-Merger conduct, Lead Plaintiffs are unduly prejudiced in developing a litigation and settlement strategy. Without the discovery stay, Lead Plaintiffs would be able to seek targeted discovery to ascertain key information about the value of this litigation—as is essential to adequately protecting the interests of the investors represented by this class. Similarly, without the discovery stay, Lead Plaintiffs would be able to ascertain key information that could be used to trace or even seek prejudgment attachment on assets that could be used to satisfy a judgment.

Thus, the PSLRA discovery stay, which was intended to discourage frivolous litigation, is having the unduly prejudicial effect of potentially allowing Defendants to arrange their assets to avoid liability. Similarly, the PSLRA discovery stay is having the unduly prejudicial effect of forcing Lead Plaintiffs to drive blindfolded as they make strategic decisions, including engaging in settlement discussions, without reasonable information about collectability—potentially giving Defendants free reign to bluff that they are judgment proof regardless of whether that is true. Driving blindfolded is not an ethos embodied by our litigation system. "The federal

discovery rules were designed to encourage liberal pre-trial disclosure in order to make trial 'less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Daniels v. National R.R. Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986) (*citing U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)).

Lead Plaintiffs seek a partial lifting of the PSLRA discovery stay to allow Lead Plaintiffs document discovery from the Defendants in the following limited areas: (1) evidence of current ownership of JA's assets and Defendants' ability to satisfy a judgment; (2) documents sufficient to show any transfers of assets and/or liabilities that JA and Defendant Jin have engaged in since the Merger; and (3) translated copies of documents filed with Chinese authorities relating to JA's relisting on the Chinese exchange, if such document describes the transfer or ownership of assets and liabilities of Defendants.

## II.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

This case is about a thriving public company, listed on a U.S. exchange, in a growing industry being taken private by its then-CEO and a group of others (the "Buyer Group"), in a transaction where investors received ***a mere thirty six cents on the dollar*** for their shares (the "Merger").[1] *See* Villegas Decl. ¶4.  The Buyer Group waited only three days before signing a deal to relist JA as a public company in China at a significantly higher valuation.  ¶140.  This timing and other facts pleaded in the Complaint demonstrate that Defendants had planned the relisting in China all along.  ¶¶296-302.  Indeed, Defendant Jin participated in ***at least four***

---

[1] Lead Plaintiffs believe this ratio represents a conservative estimate of investors' losses based on the approximately $360 million the Buyer Group paid for JA, and the more than $1 billion valuation assigned to JA by the Buyer Group and their counterparty in the relisting.  Villegas Decl. ¶4.  Through the actual relisting on the Chinese exchange, JA initially traded at a market cap of $2.1 billion on December 16, 2019 (the first day of trading after the relisting).  Villegas Decl. ¶6(a).  In the few months since JA relisted on the Chinese exchange, it has traded at a market cap of as much as $3.7 billion.  Villegas Decl. ¶6(b).  Using the approximately $2.1 billion valuation on the first day of trading after relisting, investors only received about twenty cents on the dollar for their shares.  By any metric, Defendants cheated their shareholders out of hundreds of millions of dollars in taking the Company private, and failing to pay investors what the Company was actually worth at the time of the Merger.

*months* of planning and execution regarding the Chinese listing (undisclosed to JA's investors at the time), all while assuring JA's investors that the price they were receiving in the Merger was fair, and that there was no plan to relist the Company.  ¶¶99-106.  Defendants bought JA for what they assured shareholders was fair value, and then signed a deal ultimately resulting in *more than a 200% profit* for themselves just three days after completing their deception of JA's shareholders.  Lead Plaintiffs bring this action to recover damages suffered by investors caused by Defendants' fraudulent scheme.

During the Class Period, Defendants made false and misleading statements and omissions: (i) as to the value of JA shares based on false financial information about the Company; and (ii) assuring investors that JA had no current plans to relist as a public company after going private.  As noted above, Lead Plaintiffs have reason to believe that Defendants' troubling behavior did not end with the Merger and continued through a series of tortured corporate transactions that have obfuscated the current ownership of JA's assets and liabilities, and the Defendants' ability to pay any judgment resulting from this case.

### A. Defendant Jin and the Buyer Group Take JA Private

JA is a China-based solar power company whose primary business is developing, manufacturing, and selling a variety of products that convert sunlight into electricity.  ¶53.[2] Prior to the privatization deal, JA traded on the NASDAQ through a Company-sponsored listing of ADS.  ¶55. The Company was founded by Defendant Jin, who remained CEO up to the Merger, and following the Merger he held an 80% interest in the private entity.  ¶¶8, 55, 115, 301.

---

[2] The Amended Complaint (cited herein as "¶__") was filed on June 14, 2019 at ECF No. 32.

In June 2017, the Buyer Group submitted an offer of only $6.80 per ADS, after initially offering $9.69 per ADS. ¶¶67-71. To evaluate the offers, JA established a Special Committee of the Board of Directors (the "Special Committee"), led by Defendant Jia. ¶¶44-45. The Buyer Group and the Special Committee ultimately agreed to a price of $7.55 per ADS, which was *a discount of more than 22%* from what the Buyer Group was initially willing to pay. This transaction valued JA at approximately $360 million, which was less than a third of what JA Solar's business was valued at during the relisting. Villegas Decl. ¶4.

The Class Period begins November 20, 2017, when Defendants publicly announced the Merger through a press release filed with the SEC. ¶12. Thereafter, Defendants filed proxy materials which included financial projections that undervalued the Company, ¶¶96-98, and disclaimed any present intent on the part of Defendants to relist JA after completing the Merger. ¶¶99-106. However, throughout the Merger process, Defendants had an undisclosed plan to relist JA on the A-shares market in China, despite making repeated assurances to investors to the contrary. ¶¶130-39. On July 16, 2018, the Merger closed. ¶117. Just three days later, on July 19, 2018, Defendants publicly announced JA would be relisting in China. ¶¶140-41.

### B. JA's Post-Merger Activity

Lead Plaintiffs have been able to determine through documents publicly available only in Chinese that just approximately six months after the Merger, JA valued its post-Merger business at *more than $1.1 billion* (compared to the Merger valuation of approximately $360 million). Villegas Decl. ¶4. Additionally, Lead Plaintiffs have determined that JA and Defendant Jin have transferred the Company's assets through several entities, some of which seem to be controlled by JA or Defendant Jin, and some that do not appear to be. As noted above, Lead Plaintiffs also learned that after relisting in China, JA has traded at a value of more than $3.7 billion. Villegas Decl. ¶6(b).

What Lead Plaintiffs have not been able to determine with any certainty, however, is whether JA also transferred its liabilities when it transferred its assets post-Class Period, or whether other non-Defendant individuals or entities have assumed responsibility for JA's liabilities stemming from Defendants' conduct during the Class Period, including the conduct which is the subject of this lawsuit.

Of particular concern are several representations made by defense counsel, which were described in Chinese regulatory filings related to some of the asset transfers. Those representations included assurances that:

> (1) most securities cases involving Chinese companies are settled for less than $10 million; and
>
> (2) Defendant Jin agreed to bear joint and several liability to the newly relisted entity and its subsidiaries for any loss it might suffer as a result of this, or any other overseas litigation.

Villegas Decl. ¶7.

These assurances leave serious concerns regarding judgment collection. For example, if Defendants have transferred assets from Defendant JA and if, in connection with asset transfers, Defense counsel has represented that this litigation only presents the potential for less than $10 million of liability, it is likely that Defendants have not left Defendant JA with sufficient assets to cover the real potential liability here of hundreds of millions of dollars. Similarly, the Chinese regulatory filings state that Defendant Jin has issued a personal indemnity in connection with this litigation.[3] The existence of this indemnity implies that the recipient of the indemnity (*i.e.*, the relisting entity) believed there was risk they could be found liable or bear responsibility for this

---

[3] Defendant Jin has consented to personal jurisdiction in this action, and will also be personally liable for Lead Plaintiffs' losses. *See* Stipulation and Order Regarding Service of Defendants Baofang Jin and Shaohua Jia, ECF No. 52 (defense counsel agreeing to accept service on Defendant Jin's behalf); Memorandum of Law in Support of Defendants JA Solar Holdings Co., Ltd. and Baofang Jin's Motion to Dismiss the Consolidated Amended Complaint, ECF No. 55 (Defendant Jin not challenging personal jurisdiction).

lawsuit (*e.g.*, for a constructive/actual fraudulent conveyance[4] or as a successor), and this risk raises serious issues warranting the discovery requested herein.  Without such discovery, Lead Plaintiffs do not have access to any indemnity agreements involving Defendants, nor do Lead Plaintiffs have access to crucial information about the transfers of JA's assets, making it impossible to understand the actual risks to Lead Plaintiffs and the class posed by these transfers.

### C. Procedural History

Lead Plaintiffs filed their Amended Complaint on June 14, 2019.  ECF No. 32.  On July 15, 2019, Defendant JA filed a letter requesting a pre-motion conference in accordance with Judge Carter's individual rules, ECF No. 33, and on July 29, 2019, Lead Plaintiffs submitted their opposition, ECF No. 34.  On August 12, 2019, Judge Carter granted Defendants' motion and scheduled a pre-motion conference for September 13, 2019.  ECF No. 37.  At that pre-motion conference, Judge Carter urged the parties to attend mediation to attempt to resolve Lead Plaintiffs' claims.  The parties attended mediation on January 13, 2020, but unfortunately were unable to reach agreement on a settlement.  On February 28, 2020, Defendants filed their motion to dismiss the Amended Complaint.  ECF Nos. 54-56.

Regarding this motion, on February 5, 2020, Lead Plaintiffs filed a letter with the Court seeking a pre-motion conference and permission to file this motion for a partial lifting of the PSLRA discovery stay.  ECF No. 45.  On February 10, 2020, Defendants filed a letter in opposition to Lead Plaintiffs' request.  ECF No. 46.  On March 17, 2020, the Court issued an Order denying Lead Plaintiffs' request for a pre-motion conference, but granting permission for Lead Plaintiffs to file this motion for a partial lifting of the PSLRA discovery stay.  ECF No. 57.

---

[4] In other words, the recipient had reason to believe it was receiving the assets without providing the seller with adequate consideration, or that the seller was intentionally seeking to avoid liability through the sale.

7

### III. DISCUSSION

#### A. Legal Standard

Lead Plaintiffs bring their claims under the Securities Exchange Act of 1934 ("Exchange Act"), which means this action is subject to the PSLRA. Under the PSLRA, discovery is "stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B). According to the legislative history of the PSLRA, the stay was enacted to minimize the incentive for parties to file frivolous securities suits to coerce settlements using high discovery costs, or to prevent parties from using discovery as a fishing expedition to find support for claims not pleaded in the complaint. *See In re Worldcom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (citing H.R. Conf. Rep. No. 104–369, at 37 (1995) and S. Rep. No. 104–98, at 14 (1995)). However, if "the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice," the stay may be modified or lifted. 15 U.S.C. § 78u-4(b)(3)(B); *see also WorldCom*, 234 F. Supp. 2d at 305-06.[5]

The Second Circuit has yet to define "undue prejudice" in the context of the PSLRA stay, but Courts in the Southern District of New York have defined it as "improper or unfair treatment amounting to something *less* than irreparable harm." *In re LeBranche Sec. Litig.*, 333 F. Supp. 2d 178, 182 (S.D.N.Y. 2004) (emphasis added). In applying that definition, Courts in this District have lifted the PSLRA discovery stay on the basis of undue prejudice in a variety of circumstances, including:

---

[5] A party seeking to have the PSLRA stay lifted or modified to preserve evidence must "make a specific showing that the loss of evidence is imminent as opposed to merely speculative." *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003). However, where defendants represent to the court that they "will maintain the evidence at issue," courts have found that lifting the PSLRA stay is not necessary. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2004 WL 305601 at *1 (S.D.N.Y. Feb. 18, 2004). Lead Plaintiffs do not seek a partial lifting of the PSLRA stay here to preserve evidence under the assumption that Defendants are complying with all appropriate retention obligations.

8

> (1) "where defendants might be shielded from liability in the absence of the requested discovery," *Taft v. Ackermans*, 2005 WL 850916, at *4 (S.D.N.Y. Apr. 13, 2005); or
>
> (2) "when plaintiffs would be placed at an unfair advantage to make informed decisions about litigation and settlement strategy without access to documents that form the core of the proceeding," *Mori v. Saito*, 802 F. Supp. 2d 520, 524 (S.D.N.Y. 2011).

Courts may also consider "defendants' financial state, settlement negotiations, case management, and the effect of delay in determining whether to lift the discovery stay." *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009).

A request for discovery in the context of lifting or modifying the PSLRA stay is sufficiently particularized when it is directed at "specific persons," and "identifies specific types of evidence that fall within its scope." *Mori*, 802 F. Supp. 2d at 523; *see also Gruber v. Gilbertson*, 2017 WL 3891701, at *2 (S.D.N.Y. Sept. 5, 2017) (finding a request for, among other categories, "internal communications regarding . . . the decision to go public by reverse merger, the alleged stock manipulation scheme, and the internal investigation conducted by [non-party] Dakota Plains" to be sufficiently particularized).

Lead Plaintiffs have laid out three discrete categories of documents they seek from Defendants which go directly to responsibility for liability stemming from this lawsuit, including documents regarding the transfer and current ownership of the assets and liabilities of JA and English language versions of documents submitted in connection with the Chinese relisting.

### B. The Court Should Partially Lift the PSLRA Discovery Stay to Prevent Undue Prejudice to Lead Plaintiffs in Pursuing Well-Pleaded Claims

Lead Plaintiffs represent a proposed class of investors who lost hundreds of millions of dollars in a fraud perpetrated by Defendants during the Class Period.  Since then, Defendants have made numerous transfers of assets, and potentially their liabilities.  Defendants' corporate version of a "shell game" where the assets of JA are shuffled, making it difficult to determine who owns them now, should not be condoned by the Court.

Lead Plaintiffs have suffered and will continue to suffer undue prejudice in formulating a litigation and settlement strategy as a result of Defendants' continued behavior concerning JA's assets and Defendants' ability to withstand a judgment.  Absent the discovery, Lead Plaintiffs cannot determine whether any potential judgment can or will be satisfied and, in the context of settlement discussions (if any), how to assess the likelihood of potential collectability issues.

#### 1. Lead Plaintiffs' Motion is Consistent with the Purposes Underlying the PSLRA Discovery Stay

As noted above, the purpose of the PSLRA stay is to prevent plaintiffs from using the specter of discovery costs to coerce a settlement in cases without merit, and prevent plaintiffs from fishing for evidence of claims not pleaded in their complaint.  *See Worldcom*, 234 F. Supp. 2d at 305; *see also LaBranche*, 333 F. Supp. 2d at 181-82.  Neither concern is implicated here.  Lead Plaintiffs are not pursuing a frivolous claim, as evidenced by the well-pleaded allegations in the Amended Complaint.

Additionally, Lead Plaintiffs do not seek a partial lifting of the PSLRA stay to attempt to make or support allegations not pleaded in the Amended Complaint.  Rather, Lead Plaintiffs seek a partial lifting of the PSLRA discovery stay for the sole purpose of protecting class members, to ensure they are not unduly prejudiced by litigating for years against a company whose assets were improperly sold off or transferred.  *See Lebranche*, 333 F. Supp. 2d at 184 ("The requested

10

discovery is essential to determine that strategy and to assist in formulating an appropriate settlement demand. The Lead Plaintiffs will suffer undue prejudice in having to defer such decisions."); *Bank of Am.*, 2009 WL 4796169, at *3 ("Without access to documents produced in these other proceedings, plaintiffs in these cases will be unduly prejudiced and will be less able to make informed decisions about litigation strategy."); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 252 (D. Md. 2004) ("the securities plaintiffs could suffer a severe disadvantage in formulating their litigation and settlement strategy").

While courts in this District have held that the potential burden on defendants is not a part of the analysis in deciding whether to lift or modify the PSLRA stay, here any burden on Defendants in providing this limited discovery is minimal. *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006) ("The proper inquiry under the PSLRA is whether the plaintiff would be unduly prejudiced by the stay, not whether the defendant would be burdened by lifting the stay."); *LaBranche*, 333 F. Supp. 2d at 184 ("The Defendants have not demonstrated any burden imposed by complying now with the inevitable discovery.").

### 2. Lead Plaintiffs Have Suffered and Will Continue to Suffer Undue Prejudice as a Result of the PSLRA Discovery Stay

Courts in the Southern District of New York, and elsewhere, have modified or lifted the PSLRA stay for undue prejudice "where defendants might be shielded from liability in the absence of the requested discovery." *See, e.g.*, *Vacold LLC v. Cerami*, 2001 WL 167704, at *6-7 (S.D.N.Y. Feb. 16, 2001) (granting plaintiffs' motion to lift the PSLRA stay where lack of discovery may have "unfairly insulate[d] defendants from liability for securities fraud"); *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 405 (S.D.N.Y. 2001) ("if the absence of discovery would essentially protect defendants from liability, undue prejudice would result.");

*Texas Pac. Land Tr. v. Oliver*, 2019 WL 3387767, at *4 (N.D. Tex. July 26, 2019) (lifting the PSLRA stay as to internal communications where the party would be "unfairly shielded from liability").

Here, Lead Plaintiffs are unduly prejudiced in not being able to determine if any potential judgment can or will be satisfied given Defendants' post-Merger asset transfer activity in China. Accordingly, Lead Plaintiffs require additional information in order to adduce whether they should move for pre-judgment attachment to protect the interests of the Class. *Adler v. Solar Power, Inc.*, 2019 WL 2210661, at *3 (S.D.N.Y. May 22, 2019) (citing *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 221-22 (2d Cir. 2006)) ("a court may grant a pre-judgment order of attachment if, in the court's discretion, the order of attachment is needed to provide security or jurisdiction").

Lead Plaintiffs have already prepared for and attended one mediation session at the urging of the Court while at a disadvantage in valuing their claims and formulating an appropriate litigation and settlement strategy. *See In re Metro. Sec. Litig.*, 2005 WL 940898, at *3 (E.D. Wash. Mar. 31, 2005) (lifting the stay where "this Court has urged the parties to engage in discussions and make settlement an early priority"). Lead Plaintiffs are unduly prejudiced by not having information regarding JA's ability to pay a judgment including any potential insurance coverage for securities suits or for its directors and officers that might be implicated by Lead Plaintiffs' claims, or communications related to that coverage. *See In re Comdisco Sec. Litig.*, 166 F. Supp. 2d 1260, 1263 (N.D. Ill. 2001) ("***knowledge of the existence or nonexistence of insurance and the amount of any coverage are essential to the exercise of Class Counsel's ability*** to carry out that law firm's fiduciary obligations to its class member clients").

12

**C.     Lead Plaintiffs Intend to Request Specific Documents From Defendants**

Courts have found requests sufficiently particularized where plaintiffs identify "a clearly defined universe of documents." *Worldcom*, 234 F. Supp. 2d at 306; *see also Gruber*, 2017 WL 3891701, at *2 (finding "four discrete categories of documents" from two parties to be "sufficiently particularized"). In *Vacold*, the Court found that discovery requests were sufficiently particularized where plaintiffs requested a broad category of documents that would help them determine the timing of a company's investment. 2001 WL 167704, at *7.

As detailed below, Lead Plaintiffs seek discrete categories of documents, from "specific persons," which satisfies the particularity requirement in this District. *See Mori*, 802 F. Supp. 2d at 523.

| # | CATEGORY | EXAMPLES OF DOCUMENTS WITHIN CATEGORIES |
|---|---|---|
| 1 | JA's Assets Post-Merger and Defendants' Ability to Satisfy a Judgment | Lead Plaintiffs intend to request from Defendants: (a) statements from any bank and/or trading accounts from July 2018 to present; (b) documents showing ownership in shares of, or interests in, any corporate entities or LLCs from July 2018 to present; (c) documents showing ownership of real property or other physical assets; (d) documents sufficient to show Defendant Jin's ability to satisfy a judgment in this action; (e) documents evidencing any insurance agreements and/or policies that could cover liabilities incurred by Defendants, or any of JA's officers or directors, including securities suits, during or after the Class Period; (f) communications between Defendants and any insurance brokers regarding potential coverage of liabilities, or denial of coverage for this action; (g) documents evidencing indemnification agreements between any of the Defendants and any third parties that might cover liabilities incurred by Defendants, or any of JA's officers or directors, during or after the Class Period; and (h) documents evidencing any guarantee, indemnity, assumption of liability or similar agreement between any of the Defendants and any third parties that might cover activity during or after the Class Period. |
| 2 | JA's Post-Merger Transfer of Assets and/or Liabilities | Lead Plaintiffs intend to request from Defendants evidence of the transfer of the assets and/or liabilities held by JA immediately following the close of the Merger in the form of: (a) minutes from JA's Board meetings during the Class Period; |

13

| | | |
|---|---|---|
| | | (b) emails or other forms of internal communications; (c) contracts; (d) wire transfers or account statements showing the transfer of funds; and (e) documents evidencing any agreements between Defendants and any third parties to assume any potential liabilities stemming from this suit, and the ability of those third parties to sustain a judgement in this case |
| 3 | Translations of Documents Filed with Chinese Authorities Relating to JA's Relisting on the Chinese Exchange | Lead Plaintiffs intend to request from Defendants all existing English translations of relevant documents filed with Chinese authorities relating to JA's relisting on the Chinese exchange, if such document describes the transfer or ownership of assets and liabilities of Defendants Jin or JA. |

Lead Plaintiffs intend to request documents only from Defendants JA and Jin, and only for the three discrete categories of information detailed above. S*ee, e.g.*, *Comdisco*, 166 F. Supp. 2d at 1263; *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 274 F.R.D. 437, 439-40 (E.D.N.Y. 2011) ("courts have concluded that if a responding party to discovery has translations to foreign documents produced, then it must produce the translated documents as well"). These requests are intended to inform Lead Plaintiffs' litigation and possible early settlement strategy, and ensure that the Class is not unduly prejudiced in pursuing a judgment that cannot be satisfied at the conclusion of the case.

## IV.   CONCLUSION

For the reasons detailed above, Lead Plaintiffs seek a partial lifting of the PSLRA discovery stay to make the particularized requests detailed herein of the two Defendants.

[signatures on following page]

DATED: March 31, 2020

| **LABATON SUCHAROW LLP** | **POMERANTZ LLP** |
|---|---|
| */s/ Carol C. Villegas* | */s/ Jeremy A. Lieberman* |
| Carol C. Villegas | Jeremy A. Lieberman |
| David J. Schwartz | Michael Grunfeld |
| Jake Bissell-Linsk | 600 Third Avenue, 20th Floor |
| 140 Broadway | New York, New York 10016 |
| New York, New York 10005 | Telephone: (212) 661-1100 |
| Telephone: (212) 907-0700 | Facsimile: (212) 661-8665 |
| Facsimile: (212) 818-0477 | Email: jalieberman@pomlaw.com |
| Email: cvillegas@labaton.com | Email: mgrunfeld@pomlaw.com |
| Email: dschwartz@labaton.com | |
| Email: jbissell-linsk@labaton.com | *Counsel for Co-Lead Plaintiff Altimeo Asset Management and Co-Lead Counsel for the Class* |
| *Counsel for Co-Lead Plaintiff ODS Capital LLC and Co-Lead Counsel for the Class* | |

**THE LAW OFFICE OF
JO ANN PALCHAK, P.A.**

Jo Ann Palchak
1725 1/2 7th Ave., Suite 6
Tampa, FL 33605
Telephone: (813) 468-4884
Email: jpalchak@palchaklaw.com

*Counsel for Co-Lead Plaintiff
ODS Capital LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2020, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Carol C. Villegas*
Carol C. Villegas