**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ODS CAPITAL LLC, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

vs.

JA SOLAR HOLDINGS CO., LTD.,
BAOFANG JIN, AND SHAOHUA JIA,

                Defendants.

---

Case No. 1:18-cv-12083-ALC

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT**
**UNDER RULE 60(b)(2) AND AN INDICATIVE RULING UNDER RULE 62.1**

## **<u>TABLE OF CONTENTS</u>**

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 3

III. ARGUMENT .................................................................................................................. 4

    A. The Newly Discovered Evidence Warrants Relief From Judgment ...................... 4

        1. The Evidence Would Change the Court's Ruling on Falsity ...................... 5

        2. The Evidence Would Change the Court's Ruling on Loss
           Causation ...................................................................................................... 8

    B. The Newly Discovered Evidence Warrants an Indicative Ruling Under
       Rule 62.1 ................................................................................................................ 10

        1. The Evidence Warrants the Court Stating That it Would Grant the
           Motion ......................................................................................................... 10

        2. The Evidence Raises a "Substantial Issue" ............................................... 10

IV. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albertson v. Astrue*,
   2014 WL 12708892 (C.D. Cal. Mar. 28, 2014) ....................................................................11

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
   2012 WL 4097751 (N.D. Cal. Sep. 17, 2012) .....................................................................11

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ....................................................................................................6, 7, 8

*Bd. of Trusts. of S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of New York Mellon Corp.*,
   2010 WL 3958790 (S.D.N.Y. Sept. 7, 2010) .........................................................................9

*Buxbaum v. Deutsche Bank, A.G.*,
   2000 WL 33912712 (S.D.N.Y. Mar. 7, 2000) ....................................................................6, 7

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000) ..................................................................................................8

*Gray v. Wesco Aircraft Holds., Inc.*,
   2021 WL 745310 (2d Cir. Feb. 26, 2021) ..............................................................................9

*Hornor, Townsend & Kent, Inc. v. Hamilton*,
   2003 WL 23832424 (N.D. Ga. Sept. 29, 2003) .....................................................................9

*Howard v. Fid. Nat. Title Ins. Co.*,
   2015 WL 2131225 (E.D. Mo. May 6, 2015) .........................................................................11

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   2011 WL 1330847 (S.D.N.Y. Mar. 30, 2011) ........................................................................7

*In re Petition of Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*,
   2009 WL 2381854 (S.D.N.Y. July 29, 2009),
   *aff'd*, 609 F.3d 122 (2d Cir. 2010) .......................................................................................5

*In re Puda Coal Sec. Inc., Litig.*,
   2014 WL 715127 (S.D.N.Y. Feb. 21, 2014) .........................................................................10

*In re Under Armour Sec. Litig.*,
   2020 WL 363411 (D. Md. Jan. 22, 2020) ........................................................................5, 10

*Joseph v. Mobileye, N.V.*,
   225 F. Supp. 3d 210 (S.D.N.Y. 2016) ...................................................................................7

*Kelleher v. Advo, Inc.*,
   2009 WL 2413362 (D. Conn. Mar. 30, 2009) .......................................................................9

*Knopf v. Esposito*,
   2018 WL 1961105 (S.D.N.Y. Apr. 24, 2018) ......................................................................10

*Kurzweil v. Philip Morris Companies, Inc.*,
   1997 WL 167043 (S.D.N.Y. Apr. 9, 1997)............................................................................5

*United States v. Int'l Bhd. of Teamsters*,
   247 F.3d 370 (2d Cir. 2001)..........................................................................2, 4, 5, 9

*Zaratzian v. Abadir*,
   2012 WL 9512531 (S.D.N.Y. May 30, 2012) ....................................................................10

## Rules

Fed. R. App. P. 12.1.......................................................................................................11, 12

Fed. R. Civ. P. 8(a) ................................................................................................................8

Fed. R. Civ. P. 15(a)(2)..........................................................................................................2

Fed. R. Civ. P. 60(b) ....................................................................................................... *passim*

Fed. R. Civ. P. 62.1 ......................................................................................................... *passim*

## Other Authorities

Charles R. Korsmo, Appraisal Arbitrage and the Future of Public Company M&A,
   92 WASH. U.L. REV. 1551 (2015).................................................................................11, 12

Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Relief From Judgment Under Rule 60(b)(2) and for an Indicative Ruling Under Rule 62.1.[1]

## I.   **PRELIMINARY STATEMENT**

Plaintiffs allege that Defendants misrepresented (1) Jin's plan to relist JA Solar in China and (2) the fairness of the price that Jin's Buyer Group paid in the Merger. While the Court held that Plaintiffs adequately alleged that Defendants misrepresented the fairness of the Merger, it ruled that the Complaint did not "plausibly allege that there was an actual, concrete plan to relist." (Memorandum & Order (ECF No. 80) at 20). In March 2021, after the Court's decision, a Chinese regulatory proceeding revealed game-changing evidence of Jin's relisting plan.

These facts demonstrate that Jin was personally engaged in direct negotiations with Tianye Tonglian ("Tianye," the company that JA Solar merged into in its backdoor listing) since the end of 2017. Their negotiations resulted in JA Solar and Tianye signing a "Letter of Intent for Cooperation" on February 7, 2018, in preparation of JA Solar's relisting in China. (Grunfeld Declaration in Support of Plaintiffs' Motion, Exhibit ("Ex.") A).[2]

Although Plaintiffs respectfully submit that the Complaint adequately pleads the falsity of Defendants' relisting statements for the reasons explained in Plaintiffs' appeal, this newly discovered evidence leaves no doubt—and certainly plausibly alleges—that Jin had an "actual, concrete" plan to relist JA Solar before Defendants misrepresented in the February 1, 2018 Merger proxy, that the Buyer Group had no "present plans or proposals" to relist. Indeed, Defendants argued in their motion to dismiss that "Plaintiffs do not allege any communications between the

---

[1] ¶ _ references are to the Consolidated Amended Class Action Complaint ("Complaint," ECF No. 32). Capitalized terms have the same meaning as in the Complaint. Plaintiffs' appeal is pending at *Altimeo Asset Management v. JA Solar Holds. Co. Ltd.*, Case No. 20-4268 (2d Cir.).
[2] All exhibit references are to the Grunfeld Declaration.

Buyer Group and Tianye prior to issuance of the Proxy Materials," despite knowing they had engaged in such communications. (Defs' MTD Reply (ECF No. 68) at 2).

Plaintiffs therefore seek relief from judgment under Rule 60(b)(2) of the Federal Rules of Civil Procedure, based on newly discovered evidence concerning Jin's backdoor listing plan. Once the case is reopened, Plaintiffs would then amend the Complaint under Rule 15(a)(2) (under which leave to amend is "freely give[n]"), to add the detailed allegations contained in the newly discovered evidence. While an appeal is pending in this action, the Court has authority under Rule 62.1 to state "that it would grant" the motion for relief from judgment "if the court of appeals remands for that purpose" *or* "that the motion raises a substantial issue."

Defendants' primary argument in their pre-motion letter was that Plaintiffs still "fail[] to plead reliance and loss causation." (ECF No. 85 at 2). This blatantly mischaracterizes the Court's decision, which held that the Complaint adequately alleges reliance for the Seller Shareholders even though it dismissed claims as to the Tenderer Shareholders. (Mem. & Order at 26). Defendants are also wrong regarding loss causation because the whole point of Jin's relisting plan was to relist JA Solar at a price that was substantially higher than what he paid shareholders in the Merger. These facts satisfy the Court's requirement of allegations that Defendants' misstatements "kept the price of the [Sellers'] Securities artificially low." (Mem. & Order 29).

Defendants also fail to recognize that the Court need not rule definitively that the newly discovered evidence would unquestionably change the outcome of its decision. Under Rule 60(b)(2), the facts contained in the newly discovered evidence need only be of such importance that they would "***probably***" change the Court's analysis. *United States v. Int'l Bhd. of Teamsters ("IBT")*, 247 F.3d 370, 392 (2d Cir. 2001) (emphasis added).

Furthermore, Defendants' argument that the Court should deny this motion because of the

Court's ruling on loss causation, is entirely meritless because (in addition to permitting indicative rulings on how the Court would rule), Rule 62.1 provides that the Court should grant Plaintiffs' motion if it "raises a substantial issue." The "substantial issue" option was created specifically for situations where the motion raises issues "that may either be mooted or be presented in a different context by decision of the issues raised on appeal," but that still merit being addressed before the pending appeal. Rule 62.1 Advisory Committee Notes. Plaintiffs' newly discovered evidence, at the very least, raises a "substantial issue" because ***even if it would not change this Court's ruling***, it is highly relevant to the Second Circuit's consideration of falsity *and* loss causation. The Court should grant Plaintiffs' motion to prevent the substantial prejudice that would result from the Second Circuit issuing a decision without having the benefit of considering the key evidence of Jin's relisting plan. This process will also save resources by preventing a potential subsequent appeal. Lastly, Defendants should not benefit from their concealment of crucial evidence that emerged only after the Court granted their motion to dismiss.

## II.    FACTUAL BACKGROUND

On March 8, 2021, the Chinese Securities Regulatory Commission ("CSRC") issued a decision penalizing an asset manager associated with Tianye for insider trading in connection with JA Solar's backdoor listing. (Ex. A). The CSRC made conclusive factual findings, over the defendant's objections, showing that "[s]ince the end of 2017," Tianye and the "actual controller of JA Solar" corresponded "many times with respect to the acquisition of [] all the equity of JA Solar by Tianye." (Ex. A at 2). The publication *Sina* confirmed, based on this and a related CSRC proceeding, that Defendant Jin was JA Solar's "controlling person" involved in these negotiations. (Ex. B). Jin was JA Solar's CEO, Chairman, founder, and largest shareholder. ¶¶ 39-40.

These negotiations resulted in JA Solar and Tianye signing a "Letter of Intent for Cooperation" on February 7, 2018, outlining the "intentions of the two parties on the proposed

major asset restructuring transaction," in preparation of JA Solar's relisting in China.  (Ex. A at 2).  JA Solar and Tianye then "continued to negotiate" and prepare for their reorganization until they finally revealed these longstanding plans publicly on July 19, 2018. (*Id.* at 2-3). For example, in April 2018, Jin and Tianye reached an agreement for Tianye to sell its assets to create the shell company that JA Solar would merge into in their backdoor listing. (Ex. B at 2).

While Plaintiffs continue to maintain that the allegations in the Complaint suffice, the CSRC's findings add indisputable proof that Jin had a ***concrete*** relisting plan ***before*** the misleading Proxy was issued. This newly discovered evidence also aligns perfectly with the allegations in the Complaint, including (1) the timeline described by Plaintiffs' expert, (2) witnesses who observed firsthand JA Solar's preparations for the relisting and heard about the plan from their colleagues, and (3) resumes of advisors who assisted with the relisting. (*See* Complaint § H.1, 3).

### III.   ARGUMENT

To obtain relief under Rule 60(b)(2), the "movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of . . . [the prior ruling], (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *IBT*, 247 F.3d at 392. The evidence of Jin's relisting plan meets this standard and far surpasses what is required for the Court to issue an indicative ruling under Rule 62.1 to be transmitted to the Second Circuit in Plaintiffs' appeal.

### A.   The Newly Discovered Evidence Warrants Relief From Judgment

Defendants opposed Plaintiffs' pre-motion letter under only the third and fourth prongs of the Rule 60(b)(2) standard, arguing that the evidence would not have changed the outcome and is "merely cumulative or impeaching." (ECF No. 85 at 2). Defendants thus concede that the evidence is of "facts that existed at the time of" the Court's dismissal on November 30, 2020, and that

4

Plaintiffs were "justifiably ignorant of them despite due diligence." *IBT*, 247 F.3d at 392.[3]

      1.    <u>The Evidence Would Change the Court's Ruling on Falsity</u>

The newly discovered smoking gun evidence of Jin's direct negotiations with Tianye is "admissible and of such importance that it probably would have changed the outcome," and is therefore not "merely cumulative or [duplicative]."[4] *IBT*, 247 F.3d at 392; *see also In re Petition of Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 2009 WL 2381854, at *3 (S.D.N.Y. July 29, 2009) (holding evidence "of facts that existed at the time" of court's decision would have changed the outcome), *aff'd*, 609 F.3d 122 (2d Cir. 2010).

Moreover, the requirement on a motion to dismiss to "take plaintiffs' factual allegations to be true" applies to "newly discovered evidence on a Rule 60(b)(2) motion." *Kurzweil v. Philip Morris Companies, Inc.*, 1997 WL 167043, at *5 (S.D.N.Y. Apr. 9, 1997); *In re Under Armour Sec. Litig.*, 2020 WL 363411, at *7 (D. Md. Jan. 22, 2020) (holding "the evidence must be considered as if it were presented as allegations in that pleading").

The newly discovered evidence of Jin's relisting plan easily exceeds that standard because it not only supports the plausible inference of his plan—which is all that is required—but leaves no doubt about it. The Complaint alleges that Defendants misrepresented the relisting plan through the publication of the Final Proxy on February 1, 2018. (¶¶ 15, 256). The new evidence confirms that Jin was planning (***and certainly proposing***) the relisting "[s]ince the end of 2017"—months before he represented that there was no plan or proposal to relist—and even signed a "Letter of

---

[3] Defendants could not possibly ague otherwise because the evidence involves Jin's negotiations that took place in 2017 and 2018—the key timeframe when the Merger was pending—but that Plaintiffs could not have discovered despite their diligent efforts because these facts were not revealed to the public until the CSRC released its findings in March 2021.

[4] The CSRC noted that the facts discussed "have been proved by evidence such as relevant announcements, agreement documents, transcripts of conversations of relevant personnel, bank and securities account information, etc., which are sufficient to confirm." (Ex. A at 5).

Intent for Cooperation" with Tianye on February 7, 2018. (Ex. A).[5]

Defendants note that JA Solar disclosed that it "may," in the future, "propose or develop" relisting plans. (*See* ECF No. 85 at 4; ECF No. 64 at 12). But the Court previously ruled that this language means that Defendants' denial of any plans or proposals would be actionable if there was "an actual, concrete plan to relist." (Mem. and Order at 20). Adopting the Court's rule that falsity would be established if there was a "concrete plan,"[6] the newly discovered evidence strongly supports the plausible inference that Jin had a concrete plan by the time Defendants issued the final proxy statement on February 1, 2018.  He was not just vaguely interested in relisting, but had made significant progress toward that goal, identifying a specific publicly traded company through which to conduct the relisting, and engaging in extensive discussions with that party about the relisting. Jin even signed an agreement (the "Letter of Intent") in furtherance of that relisting with that counterparty that called for the companies to take steps to prepare for that relisting. Moreover, the newly discovered evidence is even stronger because it aligns seamlessly with the multiple sources of evidence already alleged in the Complaint. (*See supra* at 4 (citing Complaint § H.1, 3)).

The falsity of Defendants' denial of any relisting plans is also supported by a long line of authority addressing precisely this type of situation. As Plaintiffs explained in opposition to Defendants' motion to dismiss, the Supreme Court in *Basic Inc. v. Levinson* addressed the exact type of allegation at issue here, holding the defendant was not permitted to falsely deny the existence of merger negotiations. 485 U.S. 224, 235-39 (1988). The court in *Buxbaum v. Deutsche*

---

[5] The evidence also shows that Defendants falsely represented that shareholders had "no viable alternative" to the Merger, since Jin planned to merge JA Solar into Tianye. ¶¶ 52, 102, 196.

[6] Plaintiffs assume this standard applies for purposes of this motion, but have appealed this conclusion on several grounds, including that the risk language cannot change the clear meaning of their denial of *present* plans or proposals, and because the risk that it warned about already occurred. (Ex. C at 24-31).

*Bank, A.G.*, 2000 WL 33912712 (S.D.N.Y. Mar. 7, 2000), thus held that it was false for Deutsche Bank's CEO to deny the existence of merger negotiations because "takeover talks were well under way." *Id.* at *19. The CSRC's findings similarly confirm that Jin's relisting plan with Tianye was "well under way" by the time Defendants falsely denied any relisting plan in the Proxy Materials.

Defendants argue that these cases are different because the defendants denied the existence of "negotiations" rather than "plans." (ECF No. 85 at 3-4). But there is no meaningful distinction between the phrase "negotiations" and Defendants' denial of any "present plans *or proposals*."[7] And Defendants ignore the fact that *Basic* also addressed the denial of "any present or pending developments which would account for the [recent] high volume of trading." 485 U.S. at 228 n.4.

Contrary to Defendants' narrow reading of *Basic*, many cases reaffirm that Defendants may not deny plans for significant corporate transactions when such plans already exist. *E.g., Joseph v. Mobileye, N.V.*, 225 F. Supp. 3d 210, 214, 219-20 (S.D.N.Y. 2016) (sustaining alleged misrepresentation that there was "no then-existing plans for an IPO," where investors helped "move toward an IPO" "in perhaps a year and a half"); *In re Merrill Lynch Auction Rate Sec. Litig.*, 2011 WL 1330847, at *2, 8 (S.D.N.Y. Mar. 30, 2011) (statements touting ARS market were false where defendants "*contemplated* ending their [market] intervention" (emphasis added)).

*Basic* held that questions concerning the significance of the underlying negotiations— including "the probability that the event will occur"—are issues of fact related to materiality that cannot be decided on a motion to dismiss. 485 U.S. at 239.  The Supreme Court also explained that while "[n]o particular event" is "necessary or sufficient by itself to render merger discussions material," "actual negotiations between principals"—as Jin and Tianye engaged in here—support

---

[7] How investors would interpret Defendants' statements is also a fact issue that is not a basis to dismiss. (*See* Ex. C at 27-28). While Plaintiffs raise this point on appeal, it also applies to the meaning of Defendants' representations in light of the newly discovered evidence.

7

such a finding. *Id.; see also Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162-63 (2d Cir. 2000) ("Following *Basic*, we have consistently rejected a formulaic approach to . . . materiality[.]").

       2.    <u>The Evidence Would Change the Court's Ruling on Loss Causation</u>

      The Court made clear "that if the complaint connects the Defendants' fraud with Plaintiffs' purported loss within the short and plain statement standard of Rule 8(a), then nothing further is needed" to allege loss causation. (Mem. & Order at 29 (internal quotation marks omitted)). When the Court ultimately dismissed Plaintiffs' claims on loss causation grounds, its ruling was limited to Defendants' misleading fairness statements. (*Id.*). While Plaintiffs respectfully disagree in their appeal with the standard that the Court applied to these fairness statements, the evidence of Jin's relisting plan supports loss causation even under that standard.

      The Court held that Plaintiffs' allegation that JA Solar's stock price would have been higher if the market knew the truth about the Company was too speculative. (Mem. & Order at 29). The evidence of Jin's relisting plan is not merely speculative, because Jin planned the backdoor listing in order to reap substantial short-term profits. ¶¶ 146-50, 155, 294; ECF No. 65 at 3. JA Solar's being undervalued in the Merger is how the defendants in the CSRC proceedings were able to reap millions of yuan in illegal profits by trading on their insider knowledge of the fact that Tianye would purchase 100% of JA Solar's equity for at least 1 billion yuan. (Ex. A at 3; Ex. B at 2-4). Indeed, the Court recognized that Plaintiffs adequately alleged that Jin "received $440 million following the Merger." (Mem. & Order at 25).

      If Defendants had disclosed the existence of Jin's relisting plan, that would have led the price of JA Solar's ADS on the NASDAQ to rise for three independent reasons: (1) the likelihood of relisting would raise the Company's inherent value of by indicating that it has access to a ready source of capital and the market approval of being a publicly traded company, which would raise the value—and therefore price—of the Company in the eyes of investors; (2) the availability of

appraisal rights would have led investors to bid up the price since they would be able to capture JA Solar's increased value through the appraisal process; and (3) Defendants would have reached a higher Merger price to prevent appraisal claims or votes against the Merger. *See Kelleher v. Advo, Inc.*, 2009 WL 2413362, at \*6 (D. Conn. Mar. 30, 2009) (explaining stock price declined after merger offer rescinded because it included materially false information); Charles R. Korsmo, *Appraisal Arbitrage and the Future of Public Company M&A*, 92 WASH. U.L. REV. 1551, 1556 (2015) (institutions specializing in appraisal claims cause "shares traded post-announcement to be bid up to the expected value of an appraisal claim" based on public information). If the allegations of Jin's relisting plan are not sufficient to satisfy the low bar required to allege loss causation, shareholders would never be able to bring securities fraud claims when a company is taken private at a premium to its trading price (as is typically the case) but at a discount to its true value that defendants misrepresented. That is plainly not the law. (*See* ECF No. 64 at 20-22).[8]

In sum, relief from judgment under Rule 60(b)(2) is warranted because Plaintiffs' newly discovered evidence "probably would have changed the outcome." *IBT*, 247 F.3d at 392; *see also Bd. of Trusts. of S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of New York Mellon Corp.*, 2010 WL 3958790, at \*4 (S.D.N.Y. Sept. 7, 2010) (granting relief because "all doubts should be resolved in favor of those seeking relief under Rule 60(b), without definitively deciding that the evidence is new and/or would change the outcome"); *Hornor, Townsend & Kent, Inc. v. Hamilton*, 2003 WL 23832424, at \*6 (N.D. Ga. Sept. 29, 2003) (holding new "purchase agreement creates an entirely different time-line for" investment and "would probably" change the outcome).

---

[8] *Gray v. Wesco Aircraft Holds., Inc.*, 2021 WL 745310, at \*2 (2d Cir. Feb. 26, 2021), which Defendants cite (ECF No. 85 at 3), held only that the specific facts before it did not support loss causation because the plaintiffs did not have any basis for alleging that an earlier set of projections were more reliable than those that formed the basis for the merger price. Unlike here, the projections in *Gray* did not even support the allegations of falsity before the district court.

**B.      The Newly Discovered Evidence Warrants an Indicative Ruling Under Rule 62.1**

1.      <u>The Evidence Warrants the Court Stating That it Would Grant the Motion</u>

Rule 62.1 allows the Court to provide an indicative ruling stating "either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." This is the procedure that a court used recently when it ruled that the *Wall Street Journal*'s report, after the court's dismissal, that Under Armour was under government investigation related to its sales and accounting practices, was "newly discovered evidence" that "tips the scale in favor of permitting Plaintiffs' claims to proceed." *Under Armour*, 2020 WL 363411, at *7. Because an appeal was pending, the court "conclude[d] that it would GRANT the Motion for Relief" if the "Fourth Circuit remands for that purpose" and "would permit Plaintiffs to file a Third Amended Complaint" containing their newly discovered evidence. *Id.* at *1.

Courts regularly issue indicative rulings under Rule 62.1 when newly discovered evidence "may well 'have changed the outcome.'" *In re Puda Coal Sec. Inc., Litig.*, 2014 WL 715127, at *2 (S.D.N.Y. Feb. 21, 2014); *Knopf v. Esposito*, 2018 WL 1961105, at *2 (S.D.N.Y. Apr. 24, 2018) (the "Court would entertain" Rule 60(b) motions; *Zaratzian v. Abadir*, 2012 WL 9512531, at *6 (S.D.N.Y. May 30, 2012) (holding while the "evidence makes plaintiff's allegations . . . plausible, the Court makes no finding one way or the other as to whether plaintiff will ultimately prevail").

2.      <u>The Evidence Raises a "Substantial Issue"</u>

Regardless of whether the Court would probably have changed its ruling, it should issue an indicative ruling under Rule 62.1 because Plaintiffs' newly discovered evidence "raises a substantial issue." Defendants' main argument in their pre-motion letter was that the CSRC's decision "does not impact the Court's reasoning" on reliance and loss causation. (ECF No. 85 at 2-3). This argument fails for the reasons explained above. (*See supra* at 2, 8-9). But even if the Court were to agree that the newly discovered evidence would not change its ruling, this evidence

still raises a "substantial issue" under Rule 62.1.

The Advisory Committee Notes explain that Rule 62.1 allows district courts to state that a motion raises a "substantial issue" in precisely this circumstance, where the motion may:

> present complex issues that require extensive litigation and that may either be mooted or be presented in a different context by decision of the issues raised on appeal. In such circumstances the district court may prefer to state that the motion raises a substantial issue, and to state the reasons why it prefers to decide only if the court of appeals agrees that it would be useful to decide the motion before decision of the pending appeal.

*See Apple Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 4097751, at *3 (N.D. Cal. Sep. 17, 2012) (recognizing the court may ultimately rule against the moving party on other grounds, but holding that "under all circumstances, [the] motion raises a substantial issue"). The Advisory Committee also explains that by issuing an indicative ruling, the "district court is not bound to grant the [underlying] motion" after remand, and the decision whether to remand at all is still "in the court of appeals' discretion under Appellate Rule 12.1."[9]

The wisdom of Rule 62.1's "substantial issue" option is particularly clear here. For example, if the Second Circuit rules in Plaintiffs' favor on loss causation, the newly discovered evidence might tip the scales in Plaintiffs' favor on the falsity of Defendants' relisting statements. Even if this Court determines that the new allegations fail to establish a "concrete plan" (which they do, for the reasons explained above), the Second Circuit may well apply Plaintiffs' alternative standard (*see supra* n. 6) under which the evidence might be determinative.

Or, even if this Court would not change its loss causation analysis based on the newly discovered evidence (which it should, as explained above), it is highly relevant to Plaintiffs' Fair

---

[9] *See Howard v. Fid. Nat. Title Ins. Co.*, 2015 WL 2131225, at *2 (E.D. Mo. May 6, 2015) (holding plaintiff's relief "might be appropriate" and "[t]he Eighth Circuit may, in its discretion, remand"); *Albertson v. Astrue*, 2014 WL 12708892, at *2 (C.D. Cal. Mar. 28, 2014) ("Although the Court would not necessarily grant the Rule 60(b) motion . . . , [it] raises a substantial issue that may warrant remand if the [Ninth Circuit] determines that the issue is properly before it.").

Value Measure of damages set forth in their appeal. (Ex. C, § III).[10] Jin's plan to turn a quick profit by relisting JA Solar at a higher value supports this theory for the relisting *and* fairness statements.

In all of these scenarios, Plaintiffs will be severely prejudiced if the Second Circuit must rule without notice of the substantial issues raised by the newly discovered evidence. The Second Circuit can still decide, based on the discretion afforded to it under Federal Rule of Appellate Procedure 12.1, whether to remand the case immediately, but either way, the appellate court will be able to account for the evidence. On the other hand, if this Court were to wait to consider the evidence until after the Second Circuit's decision, by that time Plaintiffs might very well be caught in a complex procedural thicket where they are severely prejudiced by an adverse appellate ruling based on a substantially incomplete record that would have been decided differently if the Second Circuit had the benefit of the newly discovered evidence. Furthermore, in addition to this immense substantive harm, declining to issue an indicative ruling now would lead to an unnecessary subsequent appeal of this Court's later ruling on Plaintiffs' Rule 60(b) motion.

Rule 62.1 was expressly designed to prevent this type of harm to Plaintiffs by providing for an indicative ruling that a motion raises "substantial issues" when it presents "complex issues" that may "be presented in a different context by decision of the . . . appeal." On the other hand, such a ruling risks no harm to Defendants aside from requiring them to face adjudication on a record reflecting the material new information concerning Jin's secret relisting plan.

### IV.  CONCLUSION

For all of these reasons, the Court should grant Plaintiffs' motion and provide an indicative ruling under 62.1 that it would grant Plaintiffs' Rule 60(b)(2) motion if the Second Circuit remands for that purpose or that the motion raises a substantial issue.

---

[10] Plaintiffs argue on appeal that losses are measured by "the fair value of the security . . . sold minus the fair value of the consideration" received. (Ex. C at 39).

DATED: May 7, 2021

**POMERANTZ LLP**

*/s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        mgrunfeld@pomlaw.com

*Counsel for Co-Lead Plaintiff*
*Altimeo Asset Management*
*and Co-Lead Counsel for the Class*

**LABATON SUCHAROW LLP**

*/s/ Carol C. Villegas*
Carol C. Villegas
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
        jbissell-linsk@labaton.com

*Counsel for Co-Lead Plaintiff*
*ODS Capital LLC, and*
*Co-Lead Counsel for the Class*

**THE LAW OFFICE OF**
**JO ANN PALCHAK, P.A.**
Jo Ann Palchak
1725 1/2 7th Ave.,
Suite 6 Tampa, FL 33605
Telephone: (813) 468-4884
Email: jpalchak@palchaklaw.com

*Counsel for Co-Lead Plaintiff*
*ODS Capital LLC*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2021, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Michael Grunfeld*
Michael Grunfeld
