UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ODS CAPITAL LLC, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

vs.

JA SOLAR HOLDINGS CO., LTD.,
BAOFANG JIN, AND SHAOHUA JIA,

              Defendants.

Case No. 1:18-cv-12083-ALC

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD
PLAINTIFFS' MOTION FOR LEAVE TO FILE THE SECOND
<u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................3

III.  ARGUMENT ........................................................................................................5

  A.  There is No Undue Delay, Prejudice, or Bad Faith ..........................................7

  B.  The Proposed Second Amended Complaint is Not Futile ..................................8

    i.   Plaintiffs' Falsity Allegations Are Not Futile ................................................8

    ii.  Plaintiffs' Loss Causation Allegations Are Not Futile ...................................9

      a.  The Proposed Second Amended Complaint Adequately Pleads Loss
          Causation in the Context of Going-Private Transactions .........................10

      b.  Defendant Jin's Relisting Plan Shows that JA Solar Was Worth More
          Than the Merger Price ..............................................................................14

    iii. Plaintiffs' Reliance Allegations are Not Futile .............................................16

    iv.  Plaintiffs' Proposed Amendments Are Not Futile .........................................18

IV.   CONCLUSION ....................................................................................................18

TABLE OF AUTHORITIES

Page(s)

Cases

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)............................................................................................................12

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
  19 F.4th 145 (2d Cir. 2021) ................................................................................................9

*Anthony v. City of New York*,
  339 F.3d 129 (2d Cir. 2003)................................................................................................6

*Basic v. Levinson*,
  485 U.S. 224 (1988)............................................................................................................17

*Baum v. Harman Int'l Indus., Inc.*,
  575 F. Supp. 3d 289 (D. Conn. 2021) ................................................................................13

*Block v. First Blood Associates*,
  988 F.2d 344 (2d Cir. 1993)...........................................................................................6, 13

*Brown v. Papa Murphy's Hold.*,
  2021 WL 1574446 (W.D. Wash. Apr. 22, 2021)................................................................12

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................................6

*Foman v. Davis*,
  371 U.S. 178 (1962).....................................................................................................5, 6, 16

*Grace v. Rosenstock*,
  228 F.3d 40 (2d Cir. 2000)..................................................................................................18

*In re Bristol Myers Squibb Co. Sec. Litig.*,
  586 F. Supp. 2d 148 (S.D.N.Y. 2008)................................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003)...........................................................................5, 16

*In re Initial Pub. Offering Securities Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................................3, 8, 18

*In re Shanda Games Ltd. Sec. Litig.*,
  No. 1:18-CV-2463-ALC, 2022 WL 992794 (S.D.N.Y. Mar. 31, 2022)..........................16, 17

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)............................................................................5, 8, 16

*In re Willis Towers Watson PLC Proxy Litig.*,
    2020 WL 5361582 (E.D. Va. Sept. 4, 2020).....................................................................12

*In re Winstar Commc'ns*,
    No. 01 CV 11522, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) .........................................6

*Kumaran v. Nat'l Futures Ass'n*,
    No. 120CV03668GHWSDA, 2022 WL 1749133 (S.D.N.Y. May 31, 2022) ...........................1

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015).........................................................................................5, 10, 16

*Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*,
    12 CV 3858 KMW JLC, 2012 WL 4513546 (S.D.N.Y. Oct. 1, 2012)................................6, 7

*Mills v. Elec. Auto-Lite Co*,
    396 U.S. 375 (1970)...................................................................................................12, 17, 18

*Ronzani v. Sanofi S.A.*,
    899 F.2d 195 (2d Cir. 1990).....................................................................................................5

*Tracinda Corp. v. DaimlerChrysler AG*,
    197 F. Supp. 2d 42 (D. Del. 2002)....................................................................................11, 13

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011).................................................................................................5, 16

*Wilson v. Great Am. Indus.*,
    979 F.2d 924 (2d Cir. 1992)...................................................................................................12

**Rules**

Fed. R. Civ P. 8(a) ...........................................................................................................10, 16

Fed R. Civ. P. 9(b) .................................................................................................................10

Fed. R. Civ. P. 15 ............................................................................................................ *passim*

Fed. R. Civ. P. 25(c) .................................................................................................................1

Fed. R. Civ. P. 60(b)(2)................................................................................................... *passim*

Fed. R. Civ. P. 62.1 ..............................................................................................................2, 4

Co-Lead Plaintiffs Altimeo Asset Management[1] and ODS Capital LLC ("Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion for Leave to File the Second Consolidated Amended Class Action Complaint. Plaintiffs' Proposed Second Consolidated Amended Class Action Complaint ("Proposed Second Amended Complaint"), along with a redline to the Consolidated Amended Class Action Complaint (ECF No. 32, "Amended Complaint"), are attached as exhibits to the accompanying Declaration of Michael Grunfeld ("Grunfeld Decl.").[2]

## I.   INTRODUCTION

While Plaintiffs' appeal of this Court's dismissal of the complaint was pending, bombshell evidence emerged from a regulatory proceeding in China that drastically changed the landscape of this litigation. A decision by the Chinese Securities Regulatory Commission ("CSRC") showed that before Defendants issued the final set of Proxy Materials for the Merger at issue here, Defendant Baofang Jin, JA Solar's CEO and largest shareholder, was already in advanced negotiations to conduct a backdoor listing of JA Solar on the stock market in China.

Defendants not only failed to disclose that information earlier, but strongly implied that the absence of "any communications between the Buyer Group and Tianye prior to issuance of the Proxy Materials" (Defs' MTD Reply (ECF No. 68) at 2)), was the missing link undermining Plaintiffs' falsity allegations.  Once this information came to light, Plaintiffs promptly sought an

---

[1] Lead Plaintiff Altimeo Asset Management recently ceased operations and transferred its rights and claims in this action to MW Gestion, which is another asset manager based in Paris, France. Those claims will continue to be pursued in this action in the name of Altimeo Asset Management. *See* Fed. Rule of Civil Procedure 25(c) (providing that "[i]f an interest is transferred, the action may be continued by or against the original party"); *Kumaran v. Nat'l Futures Ass'n*, No. 120CV03668GHWSDA, 2022 WL 1749133, at *4 (S.D.N.Y. May 31, 2022) (holding "NRCM's dissolution does not limit its ability to continue these related lawsuits").

[2] ¶ references herein are to the Proposed Second Amended Complaint.

indicative ruling under Rule 62.1 of the Federal Rules of Civil Procedure as to how the Court would rule on this newly discovered evidence if jurisdiction were returned to the District Court. This Court issued an indicative ruling, the Second Circuit then remanded the case, and the Court has now granted Plaintiffs relief from judgment under Rule 60(b)(2) and allowed them to seek leave to amend under Rule 15 because the newly discovered evidence would "probably . . . change[] the outcome" of the Court's prior ruling on falsity" and "also affects my prior ruling on the loss causation element of Plaintiffs' claims." (ECF No. 104 at 3-4).

Plaintiffs seek leave to amend, pursuant to the Court's Order, to add allegations to the Complaint related to the newly discovered evidence of Defendant Jin's backdoor listing plan. This evidence, including that Jin signed a Letter of Intent with JA Solar's counterparty for the backdoor listing just a few days after Defendants issued the Final Proxy, plainly shows that Defendants' statements that the Buyer Group did not have any "present plans or proposals" to relist were false. (ECF No. 104 at 3). Evidence of the relisting plan also supports loss causation because the whole point of the Merger was for Jin and the Buyer Group to buy JA Solar on the cheap and resell it at a massive profit in the relisting.  In fact, the CSRC Decision shows that an individual that traded based on the confidential information of the relisting plan while the Merger was pending was able to profit by utilizing the undisclosed information at issue here. In addition, now that the case has been reopened as to previously dispositive issues, Plaintiffs seek to add allegations on the non-dispositive issue of reliance of the Tenderer Shareholders that traded their JA Solar shares in the Merger. The Court should grant Plaintiffs' Motion because it has already ruled that the newly discovered evidence of Defendant Jin's negotiations with Tianye Tonglian "changes [the Court's] conclusion" in its prior dismissal and, "[u]nder Rule 15, the Court 'should freely give leave' to amend pleadings 'when justice so requires.'" (ECF No. 104 at 3-4 (quoting Fed. R. Civ. P. 15)).

Under these circumstances, Plaintiffs easily satisfy the Rule 15 standard. The Court's granting of Plaintiffs' motion for relief from judgment based on newly discovered evidence means that Plaintiffs have already satisfied the more demanding standard that applies under Rule 60(b)(2). Defendants will not be able to show that Plaintiffs have engaged in undue delay, that there is any prejudice or bad faith associated with the proposed amendments, or that the amendments are futile. When ruling on this Motion, the Court should not entertain arguments by Defendants that the amendments would not "survive a motion to dismiss, [because] such argument would better be taken up on a motion to dismiss." *In re Initial Pub. Offering Securities Litig.*, 214 F.R.D. 117, 125 (S.D.N.Y. 2002). The Court should therefore allow Plaintiffs to file the Proposed Second Amended Complaint so that their robust allegations based on the newly discovered evidence of Defendant Jin's backdoor listing plan can have a full and fair hearing.

## II.      BACKGROUND

On November 30, 2020, the Court dismissed the Amended Complaint on the grounds that Plaintiffs did not "adequately plead violations of the Exchange Act on behalf of the Seller Shareholders and Tenderer Shareholders." (ECF Nos. 80-81). Specifically, the Court found that Plaintiffs did not adequately plead falsity because they did not "plausibly allege that there was an actual, concrete plan to relist" at the time of the alleged misstatements. (ECF No. 80). As a result, the Court did not consider Plaintiffs' arguments regarding relisting plans and proposals when evaluating loss causation. (ECF No. 104 at 3). Plaintiffs appealed the Court's ruling. (ECF No. 82).

On March 8, 2021, the Chinese Securities Regulatory Commission ("CSRC") issued a decision penalizing an asset manager associated with Tianye for insider trading in connection with JA Solar's backdoor listing. ¶ 133; ("CSRC Decision," Exhibit A to the Grunfeld Declaration in Support of Motion for Relief from Judgment (ECF No. 92)). The CSRC made conclusive factual

findings, over the defendant's objections, showing that "[s]ince the end of 2017," Tianye and Defendant Jin corresponded "many times with respect to the acquisition of [] all the equity of JA Solar by Tianye." ¶ 134; (ECF No. 92, Ex. A at 2 and Ex. B (*Sina* article)). Jin was JA Solar's CEO, Chairman, founder, largest shareholder, and leader of the Buyer Group. ¶¶ 40-41, 47.

These negotiations resulted in JA Solar and Tianye signing a "Letter of Intent for Cooperation" on February 7, 2018—just days after the Final Proxy was issued—outlining the "intentions of the two parties on the proposed major asset restructuring transaction," in preparation for JA Solar's relisting in China. ¶ 135; (ECF No. 92, Ex. A at 2).[3] JA Solar and Tianye then "continued to negotiate" and prepare for their reorganization until they finally revealed these longstanding plans publicly on July 19, 2018. ¶¶ 136-38. For example, in April 2018, Jin and Tianye reached an agreement for Tianye to sell its assets to create the shell company that JA Solar would merge into in their backdoor listing. ¶ 136; (ECF No. 92, Ex. B at 2).

The CSRC's findings add indisputable proof that Jin had a significant relisting plan before the misleading Proxy was issued. This newly discovered evidence also aligns with the allegations in the Amended Complaint, including (1) the timeline described by Plaintiffs' expert, (2) witnesses who observed firsthand JA Solar's preparations for the relisting and heard about the plan from their colleagues, and (3) resumes of advisors who assisted with the relisting. (*See* Proposed Second Amended Complaint § H.1, 3).

Upon discovery of this evidence, Plaintiffs moved expeditiously for relief from judgment under Rule 60(b)(2) of the Federal Rules of Civil Procedure and, because their appeal of the Court's dismissal was pending, for an indicative ruling under Rule 62.1. (ECF Nos. 83, 86, 89-92).

---

[3] The CSRC determined that "[t]he sensitive period of insider information" for purposes of its insider trading case "was from February 2, 2018"—which would be February 1, 2018 in the United States—"to July 19, 2018." ¶ 135.

The Court granted Plaintiffs' motion for an indicative ruling, holding that the "newly discovered evidence raises a substantial issue that [it] should examine before the appeals court rules on the propriety of the dismissal of [the] action for failure to state a claim." (ECF No. 96). After being notified of this ruling, the Second Circuit granted Plaintiffs' Motion to Remand to allow the District Court to consider the issues raised in its order. (ECF No. 97).

Once this matter was remanded, the Court granted Plaintiffs' Rule 60(b)(2) motion because "the newly discovered evidence warrants relief from judgment as it would probably . . . change[] the outcome of the Court's prior ruling on falsity" and "also affects my prior ruling on the loss causation element of Plaintiffs' claims." (ECF Nos. 104 at 3).

## III.    ARGUMENT

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave to amend when justice so requires." *See also In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003) (same). Moreover, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (internal quotation marks omitted).

"This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). The Supreme Court has similarly held that leave to amend should be "freely given" because the purpose of pleading under the Federal Rules of Civil Procedure is "to facilitate a proper decision on the merits," not to set the stage for "a game of skill in which one misstep by counsel may be decisive to the outcome." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962).

The Second Circuit supports leave to amend particularly in securities fraud cases because they "combine[] a complex commercial reality with a long, multi-prong complaint." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015); *see also In re*

*Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (holding leave to amend is particularly appropriate in securities fraud lawsuits); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-53 (9th Cir. 2003) (same).

"Where there is neither a showing of the movant's undue delay, bad faith or dilatory motive, nor a showing of undue prejudice to the opposing party by virtue of allowance of the amendment, leave to amend should be granted." *In re Winstar Commc'ns*, No. 01 CV 11522, 2006 WL 473885, at *1 (S.D.N.Y. Feb. 27, 2006). The Supreme Court has held that the "mandate" to freely grant leave to amend "is to be heeded" absent undue delay, bad faith, undue prejudice, or futility. *Foman*, 371 U.S. at 182.

The judicial policy favoring amendment is so strong that the burden is on the ***non*-**moving party to demonstrate bad faith or undue prejudice. *See Anthony v. City of New York*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (interpreting Rule 15(a) "in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice"). As the Second Circuit has explained, a non-movant is required to show delay coupled with prejudice to the non-moving party or bad faith by the moving party. *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). "In determining what constitutes prejudice, courts consider whether the amended pleading would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute.'" *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, 12 CV 3858 KMW JLC, 2012 WL 4513546, at *2 (S.D.N.Y. Oct. 1, 2012) (*quoting Block*, 988 F.2d at 350).

Defendants will not be able to show any reason to deny leave to amend here. The Court recognized the permissive standard for leave to amend when it ruled, in granting Plaintiffs' motion for relief from judgment, that "[u]nder Rule 15, the Court 'should freely give leave' to amend

pleadings 'when justice so requires.'" (ECF No. 104 at 4 (quoting Fed. R. Civ. P. 15)). Plaintiffs faced a much higher bar in their prior motion for relief from judgment under Rule 60(b)(2). The Court's granting of Plaintiffs' motion for relief from judgment means that it should certainly grant Plaintiffs' motion for leave to amend.

### A.        There is No Undue Delay, Prejudice, or Bad Faith

There can be no argument of delay given that Plaintiffs acted quickly and moved for relief from judgment and an indicative ruling immediately upon learning about the CSRC Decision, within a mere five weeks of the ruling itself. (*See* ECF No. 83).

There also is no prejudice here as the newly discovered evidence incorporated into the Proposed Second Amended Complaint has already been the subject of Plaintiffs' fully briefed motion for relief from judgment that the Court granted. Furthermore, discovery in this case has not yet commenced and Plaintiffs' proposed amendments provide additional support for the allegations and arguments that Plaintiffs have already raised in this action, including in their Amended Complaint (ECF No. 32) and opposition to Defendants' motion to dismiss that pleading (ECF No. 64). As such, granting leave to amend does not prejudice Defendants. *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, 12 CV 3858 KMW JLC, 2012 WL 4513546, at *2 (S.D.N.Y. Oct. 1, 2012) (explaining that courts consider whether the amended pleading requires the opposing party to expend significant additional resources to conduct discovery and prepare for trial or cause significant delay when assessing prejudice). There also is no bad faith here. Defendants do not contest that Plaintiffs were "justifiably ignorant of [the newly discovered evidence] despite due diligence," until they learned of the CSRC Decision. (ECF No. 104 at 2).

Furthermore, there is no prejudice or bad faith here because the Court directed Plaintiffs to seek leave to amend and courts consistently allow plaintiffs to amend their complaint at the motion

to dismiss stage. *See Take-Two Interactive*, 551 F. Supp. 2d at 312 (holding plaintiffs should be given leave to amend because they did not previously have "the benefit of full adversarial briefing of their pleadings"). The basis for amendment here is even stronger than in the typical case because this motion is based on newly discovered evidence that the Court has already ruled warrants relief from judgment.

### B. The Proposed Second Amended Complaint is Not Futile

Defendants will also be unable to demonstrate that an amendment would be futile. Where "the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent." *In re Initial Pub. Offering Securities Litig.*, 214 F.R.D. 117, 125 (S.D.N.Y. 2002). Plaintiffs' proposed amendments provide substantial additional factual support that Defendant Jin planned to relist JA Solar at the time of the alleged misstatements. The Court has already found that this newly discovered evidence "provides sufficient support of Defendants' failure to disclose," and that "[t]his development also affects my prior ruling on the loss causation element of Plaintiffs' claims." (ECF No. 104 at 3). If Defendants continue to contest the adequacy of these allegations, Plaintiffs should have the opportunity for them to be fully heard in the context of a motion to dismiss.

### i. Plaintiffs' Falsity Allegations Are Not Futile

The newly discovered evidence set forth in the Proposed Second Amended Complaint unequivocally establishes that Defendant Jin planned to relist JA Solar before Defendants misrepresented in the February 1, 2018 Proxy that the Buyer Group had no "present plans or proposals" to relist. (ECF No. 104 at 3). As the Court has already recognized, the newly discovered evidence "strengthens the inference of the existence of a plan to relist JA Solar before the February

1, 2018 proxy." (ECF No. 104 at 3). This evidence revealed by the CSRC Decision "revealed that Defendant Jin and Tonglian had communicated often regarding Tonglian's acquisition, that Tonglian and JA Solar signed a letter of intent outlining the proposed restructuring transaction, and that Tonglian and JA Solar continued to negotiate after the signing of the letter."  ¶¶ 133-38; (ECF No. 104 at 3). The Court even held that "[a]t the motion to dismiss stage, this evidence provides sufficient support of Defendants' failure to disclose" and that it would "probably . . . change[] the outcome" of the Court's prior ruling on falsity." (ECF No. 104 at 3).

The Second Circuit's decision in *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 148 (2d Cir. 2021), further supports Plaintiffs' proposed amendments as to the falsity element of their claim. Plaintiffs in *Qihoo*, like here, allege that the defendants misrepresented the Buyer Group's "current plans" to relist the defendant company following the completion of a merger. *Id.* at 147-148. The Second Circuit determined that Plaintiffs' allegations created "a plausible inference that a concrete plan was in place at the time Qihoo issued the Proxy Materials." *Id.* at 150-151. This ruling in *Qihoo* was based on an expert analysis of the relisting timeline, which "was announced a mere sixteen months after the Merger," and news articles reporting "that a privatization plan was provided to the Buyer Group that involved relisting the company on the Chinese stock market." *Id.* at 150-51. The evidence of the relisting plan here—including an even-more-compressed timeline, the newly discovered evidence of Jin's negotiations with Tianye Tonglian, and all of the corroborating evidence that was already alleged in the prior complaint— easily surpass the *Qihoo* standard.

### ii.     Plaintiffs' Loss Causation Allegations Are Not Futile

The Court also recognized when it granted Plaintiffs' motion for relief from judgment that the newly discovered evidence "affects [its] prior ruling on the loss causation element of Plaintiffs'

claims." (ECF No. 104 at 3). The Court explained that its prior ruling on loss causation "did not account for Plaintiffs' arguments regarding relisting plans and proposals" because the Court "had already found that Plaintiffs failed to adequately allege that Defendants misrepresented a plan to relist" before addressing loss causation as to Plaintiffs' other claims. *Id.* Moreover, as the Court explained, Plaintiffs' burden to allege loss causation is low because "all that is needed to satisfy the loss causation element" is to connect "'the Defendants' fraud with Plaintiffs' purported loss within the short and plain statement standard of Rule 8(a).'" *Id.* (quoting *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 163 (S.D.N.Y. 2008)).[4]

### a. The Proposed Second Amended Complaint Adequately Pleads Loss Causation in the Context of Going-Private Transactions

The Proposed Second Amended Complaint adequately alleges that Plaintiffs suffered harm as a result of Defendants' misrepresentation of the Buyer Group's backdoor listing plan, when Plaintiffs sold their JA Solar securities during the Class Period, because the whole purpose of the relisting plan was for Defendant Jin and the Buyer Group to turn around and relist JA Solar at a valuation that was multiple times the Merger price. The Court held that the prior complaint did not adequately allege loss causation as to Defendants' statements about the fairness of the Merger, because it determined that "Plaintiffs have failed to adequately plead that the misleading statements regarding JA Solar's financial position kept the price of the Seller Shareholders' Securities artificially low at the time they sold their shares." (ECF No. 80 at 29). But the Court did not previously consider how this standard applies to Defendant Jin's relisting plan because it had already dismissed Plaintiffs' claims arising out of the relisting statements on falsity grounds. (ECF No. 104 at 3).

---

[4] In addition, regardless of whether Rule 8(a) or Rule 9(b) applies, the burden of pleading loss causation "is not a heavy one." *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC,* 797 F.3d 160, 187 (2d Cir. 2015).

The Proposed Second Amended Complaint satisfies this standard with respect to Defendants' relisting statements because if shareholders knew that Jin was already in the process of negotiating JA Solar's backdoor listing with Tianye Tonglian for three times the Merger price, JA Solar's ADS price on the NASDAQ would have risen for at least four independent reasons: (1) the knowledge of the relisting would signal to shareholders that the Company was worth much more than the Merger price, forcing the Buyer Group to raise the Merger price to prevent appraisal claims, votes against the Merger, or shareholders seeking other means of recovery; (2) the availability of appraisal rights would have led investors to bid up the price since they would be able to capture JA Solar's increased value through the appraisal process; (3) the likelihood of relisting would indicate that the Company had a higher value because it would have access to a ready source of capital and the market approval of being a publicly traded company; and (4) shareholders would know that the Company's intrinsic value was far higher than the Merger price and would therefore trade in the Company's shares based on the potential to obtain that value if the Merger were to fail. ¶¶ 345-49, 353-60. For example, if shareholders knew about Defendant Jin's relisting plan, they would have demanded a higher "acquisition premium" based on the "true nature of the transaction." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 53, 68 (D. Del. 2002) (holding loss causation adequately pled based on claim that defendants "planned from the onset to mount a concealed take-over").

Plaintiffs are not required to offer any further allegations at the pleading stage as to how JA Solar's share price, or the course of the Merger, would be affected by Defendants' misstatements, because ***Defendants' fraud prevented these counterfactual circumstances from coming about***. This is a basic feature of going-private transactions and requiring more specific proof of counterfactual scenarios would preclude shareholders from being able to recover in

going-private transactions where they are clearly deceived into selling their shares for less than they are worth.  Supreme Court, Second Circuit, and many recent District Court decisions have found loss causation allegations in situations like these do not require proof of the precise counterfactual scenario that would have unfolded but-for the fraud.

Rather, these authorities make clear that if a plaintiff is defrauded into selling shares, damages equal "the fair value of the security he sold minus the fair value of the consideration he received." Jacobs, Disclosure and Remedies under the Securities Laws, 20:7 (Dec. 2018 ed.) (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972)). Plaintiffs laid this argument out in opposition to Defendants' motion to dismiss the prior complaint and on appeal (ECF No. 64 at 20-22; ECF No. 91 at 11-12), but the Court has not yet had the opportunity to address it as to Defendants' relisting statements.

While it stands to reason that shareholder reactions and the market price of the relevant security were affected by Defendants' misstatements, these assumptions are built-in to the approach that courts take focusing on the company's fair value. Indeed, the Supreme Court has held that "there is no need to supplement" allegations that a proxy was misleading with "proof of whether the defect actually had a decisive effect on voting," because that counterfactual involves the "impracticalities of determining how many votes were affected." *Mills v. Elec. Auto-Lite Co*, 396 U.S. 375, 385 (1970); *see also In re Willis Towers Watson PLC Proxy Litig.*, 2020 WL 5361582, at *9 (E.D. Va. Sept. 4, 2020) (rejecting argument at class certification that plaintiff did not offer evidence that "the Merger would not have been approved"). That is also why courts recognize that "the forfeiture of appraisal rights" supports a claim in this context. *Wilson v. Great Am. Indus.*, 979 F.2d 924, 932-33 (2d Cir. 1992); *see also Brown v. Papa Murphy's Hold.*, 2021 WL 1574446, at *4 (W.D. Wash. Apr. 22, 2021).

Similarly, the standard practice for buyers in a merger is to offer a premium on the stock's recent trading price because otherwise shareholders would not accept the offer. ***That offer price, however, can still undervalue the company.*** ¶¶ 350-52. Claims are therefore actionable even though "merger announcements typically are followed by a rise in price." *Baum v. Harman Int'l Indus., Inc.*, 575 F. Supp. 3d 289, 299 (D. Conn. 2021). Moreover, the analysis of price reactions is a "fact intensive matter[] usually requiring expert testimony." *Tracinda*, 197 F. Supp. 2d at 67-68 (rejecting argument that plaintiffs got a 34% premium and "price actually rose" after the announcement). While Plaintiffs articulate a compelling explanation of how Defendants' misrepresentations kept the price of JA Solar ADS below fair value, the ultimate question for loss causation in going-private transactions is whether the price received was less than the fair value of the stock that Defendants misrepresented.

Unlike in a case where shareholders are defrauded into purchasing stock at an artificially inflated price and the company's share price drops when the truth is revealed through a corrective disclosure, when shareholders are tricked into selling shares before the company is taken private, there is no public trading price after the harm occurs. This distinction between "seller" cases and "buyer" cases matters in two ways. **First**, the injury plaintiffs suffer is not dependent on a future stock price decrease; upon selling plaintiffs immediately give up a valuable security for less than its value and are worse off by an amount equal to the difference between that fair value and the sale price. There is simply no reason to look for a subsequent price reaction. **Second**, there is no market price to look to for a price reaction because the company becomes private before the fraud is revealed. Plaintiffs are therefore not required to show further proof at the pleading stage of how the company's share price would react. Otherwise, as Judge Engelmayer observed during the Second Circuit remand argument, "the nature of the problem here means you're never going to

get" a corrective disclosure "and so on that theory, if that's what you're looking for, there's no

way a plaintiff in this situation, even if lied to like crazy . . . is going to be able to have a claim."

(ECF No. 98-1 at 15:9-22). Rather, if the truth about a relisting plan "would have generally tended

to make the stock more attractive," that is something that "experts can battle upon in discovery

and summary judgment." (*Id.* at 15:23-16:5).

> ### b. Defendant Jin's Relisting Plan Shows that JA Solar Was Worth More Than the Merger Price

Defendant Jin and the Buyer Group's relisting plan is evidence that JA Solar was worth

more than the Merger price at the time of the Merger. There would be no reason for the Buyer

Group to plan, contemporaneously with buying the Company, to relist it on another exchange

unless they would be able to do so for a higher price than they paid. ¶ 345. Jin's advancing so far

in his relisting negotiations with Tianye Tonglian shows that Jin already viewed JA Solar as far

more valuable than the Merger price before Defendants issued the Final Proxy.

This connection between the relisting plan and JA Solar's greater value at the time of the

Merger is also shown by the fact that just a few months after the Merger closed, JA Solar was

valued at approximately three times the Merger price. ¶¶ 154-55. The newly discovered evidence

confirms this valuation by showing that an individual trading based on inside information about

the backdoor listing was able to profit by an amount consistent with Plaintiffs' loss causation

allegations, by trading on the very information Plaintiffs allege was misrepresented. The individual

who was the subject to the CSRC proceeding nearly tripled their investment by trading based on

the confidential information of JA Solar's relisting. ¶ 344. They "purchased 693,500 shares of

'Tianye Tonglian' stock" for 8,395,946 yuan based on confidential knowledge of the relisting and

subsequently sold that stock "[a]fter the insider information was disclosed" for "a profit of

1,624,514.2 yuan." *Id.* The similarity between the amount that JA Solar was reported to be valued

shortly after the Merger and the enormous profits reaped by someone who knew of the relisting plan establish that the relisting plan enabled the Buyer Group to profit by that multiple of the Merger price. *Id.*

Similarly, the contrast in how Defendant Jin described JA Solar in connection with the Merger as compared to the relisting highlights the extent to which JA Solar was undervalued in the Merger so that the Buyer Group could relist it for multiple times the Merger price. ¶¶ 160-68, 346-48. The Proxy Materials gave downcast descriptions of JA Solar's business prospects. Then, when working to complete the backdoor listing, Jin and JA Solar suddenly changed their tune and spoke very positively about the Company to support its significantly higher relisting valuation. *Id.* These diametrically opposed messages were not based on any changed circumstances, but rather, were rooted in fundamentally different assumptions that Jin applied to JA Solar's business when describing it to shareholders in the Proxy Materials, as compared to when justifying JA Solar's far-greater valuation in the relisting. *Id.* The assumptions that Jin applied to the relisting directly contradicted the assumptions that Houlihan Lokey used, based on information from JA Solar's management, to value the Company in the Merger. If Jin's vastly more positive assumptions in the relisting are plugged-in to Houlihan's model that formed the basis for its fairness opinion in the Merger, the Company would be valued much higher than what Defendants described as "fair" in the Merger. *Id.*

The potential for buyers to engage in this type of misconduct is heightened in management-led buyouts, such as this one, where the buyers are led by company insiders who are in the perfect position to use their personal knowledge of the company to buy it at a discount to its fair value. Defendant Jin was positioned that way as JA Solar's CEO, Chairman, founder, and

largest shareholder who stood to own approximately 80% of the Company following the Merger. ¶¶ 40-41, 47, 317.

These allegations of JA Solar's higher value adequately plead loss causation because, as the Court explained, "all that is needed to satisfy the loss causation element" is to connect "the Defendants' fraud with Plaintiffs' purported loss within the short and plain statement standard of Rule 8(a)." (ECF No. 104 at 3).

### iii.    Plaintiffs' Reliance Allegations Are Not Futile

Plaintiffs also seek to amend the complaint with allegations related to the reliance element of their claims. The Court already ruled in favor of the Seller Shareholders on the element of reliance. (ECF No. 80 at 26). Plaintiffs therefore had no reason to seek to amend the complaint as to this issue previously when the complaint was dismissed on other grounds. But once Plaintiffs are amending the complaint, they should be permitted to do so as to all relevant issues because leave to amend is freely given to facilitate a proper decision on the merits. *See e.g. In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003); *Foman v. Davis*, 371 U.S. 178, 181-82 (1962); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015); *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008).

As with loss causation, the Court has not yet addressed reliance as to Defendants' relisting statements, because Plaintiffs' claims arising out of those statements were dismissed in the Court's ruling on falsity. (ECF No. 104 at 3). In addition, the proposed amendments as to reliance for the Tenderer Shareholders will not be futile in light of the Court's most recent decision in *In re Shanda Games Ltd. Sec. Litig.,* No. 1:18-CV-2463-ALC, 2022 WL 992794 (S.D.N.Y. Mar. 31, 2022). In their motion to dismiss, Defendants relied entirely on a prior decision in *Shanda* to argue that the

Tenderer Shareholder claims should be dismissed because the fraud-on-the-market presumption of *Basic v. Levinson*, 485 U.S. 224 (1988), does not apply to going-private transactions. (*See* Motion to Dismiss Brief (ECF No. 55) at 24). The Court, however, found in its most recent decision in *Shanda* that the plaintiff there met his burden to defeat defendants' motion to dismiss on the reliance element, by showing that he traded in an efficient market. *Shanda*, 2022 WL 992794 at 5. The Court presumed that "ADS holders, such as the plaintiff, could have reasonably relied on the integrity of the market price when deciding whether to exercise dissenters' rights or sell shares at the negotiated price." *Id.* The proposed amendments to the complaint show that the same is true for the Tenderer Shareholders here. ¶¶ 384-85.

The Court should also allow Plaintiffs to amend to more explicitly identify that transaction causation is satisfied by the standard set out in *Mills v. Elec. Auto-Lite Co*, 396 U.S. 375 (1970). While Plaintiffs' prior complaint provided adequate factual support for invoking *Mills*, and while *Mills* functions to alleviate the requirement of proving reliance, identifying that theory more expressly in the complaint clarifies the importance of that issue. The Court did not address this issue in its prior ruling on Defendants' motion to dismiss. Plaintiffs seek to add allegations on this topic so that the Court can address them. ¶ 386.

The application of *Mills* to these facts is firmly supported by Supreme Court and Second Circuit precedent. The Supreme Court stated in *Basic* that "we previously have dispensed with a requirement of positive proof of reliance, where . . . [a] proxy solicitation itself, rather than the defect in the solicitation materials, served as an essential link in the transaction." 485 U.S. at 243 (citing *Mills*, 396 U.S. at 384-85). *Mills* adopted this rule to ensure claims could proceed even where "[p]roof of actual reliance by thousands of individuals would . . . not be feasible." 396 U.S.

375, 382 n.5. The Second Circuit, in *Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000), held that *Mills* applies to Section 10(b) claims like those here. *Id.* at 48-49.

The Merger required public shareholder approval in order to pass. ¶ 84.  This is dispositive because the reliance element is satisfied under Section 10(b) when the shareholders' "vote, sale of shares, or other action[,]  was required" for a merger that the buyer obtained through deception. *Grace*, 228 F.3d at 48-49. When the Second Circuit addressed whether to remand here, Judge Pooler noted that this issue had not been addressed yet and that it raises "a factual question of how many votes were tendered . . . in favor of the merger." (ECF No. 98-1 at 8:14-9:11). Plaintiffs seek to elaborate on this factual issue in the Proposed Second Amended Complaint.

### iv.    **Plaintiffs' Proposed Amendments Are Not Futile**

Plaintiffs will prevail on the falsity, loss causation, and reliance arguments discussed above if Defendants decide to move to dismiss again. But the Court does not need to conclusively decide that now. The question here is only whether Plaintiffs should be granted leave to amend, which is freely given. Questions about the merits of Plaintiffs' proposed amendments "would better be taken up on a motion to dismiss." *In re Initial Pub. Offering Securities Litig.*, 214 F.R.D. at 125. Plaintiffs should therefore be permitted to file the Proposed Second Amended Complaint so that the substantial issues they raise can be given a full and fair hearing.

## IV.    CONCLUSION

For all of these reasons, the Court should grant Plaintiffs' motion for leave to file the Proposed Second Amended Complaint.

DATED: September 23, 2022

**POMERANTZ LLP**

*/s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
   mgrunfeld@pomlaw.com

*Counsel for Co-Lead Plaintiff*
*Altimeo Asset Management*
*and Co-Lead Counsel for the Class*

**LABATON SUCHAROW LLP**

*/s/ Carol C. Villegas*
Carol C. Villegas
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
   jbissell-linsk@labaton.com

*Counsel for Co-Lead Plaintiff*
*ODS Capital LLC, and*
*Co-Lead Counsel for the Class*

**THE LAW OFFICE OF**
**JO ANN PALCHAK, P.A.**
Jo Ann Palchak
1725 1/2 7th Ave.,
Suite 6 Tampa, FL 33605
Telephone: (813) 468-4884
Email: jpalchak@palchaklaw.com

*Counsel for Co-Lead Plaintiff*
*ODS Capital LLC*