UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODS CAPITAL LLC, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> JA SOLAR HOLDINGS CO., LTD., BAOFANG JIN, and SHAOHUA JIA, <br><br> Defendants. | Case No.  1:18-cv-12083-ALC <br><br> <u>CLASS ACTION</u> |

**<u>CO-LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 3

      A.    Procedural History of the Litigation ..................................................... 3

      B.    Summary of Key Aspects of the Proposed Settlement ......................... 5

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............ 8

      A.    The Standards for Preliminary Approval ............................................. 8

      B.    Approval of the Settlement is Likely Under Rule 23(e)(2) ................. 10

            1.    Plaintiffs and Co-Lead Counsel Have Zealously Represented the
                  Settlement Class ........................................................................ 10

            2.    The Settlement Is the Product of Good Faith, Informed, and Arm's-
                  Length Negotiations by Experienced Counsel .......................... 11

            3.    The Settlement Provides Significant and Certain Benefits ........ 12

            4.    The Proposed Method for Distributing Relief Is Effective ........ 13

      C.    The Settlement Does Not Excessively Compensate Co-Lead Counsel ............... 14

      D.    All Settlement Class Members Are Treated Equitably Relative to One Another. 15

      E.    The Proposed Settlement Will Meet the Additional *Grinnell* Factors ................. 16

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
      SETTLEMENT PURPOSES ................................................................................. 19

      A.    The Settlement Class Meets the Requirements of Rules 23(a) and 23(b)(3) ........ 19

      B.    Nationwide Class Certification is Appropriate for Settlement Purposes ............. 23

      C.    The Court Should Appoint Co-Lead Counsel as Counsel for the Settlement
            Class ................................................................................................... 23

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
      NOTICE ............................................................................................................ 24

VI.   PROPOSED SCHEDULE OF EVENTS ................................................................. 25

CONCLUSION ............................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...........................................................................................20, 22

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)...............................................................................................4, 17

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ................................................................................21

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
  Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) .......................................................................................21

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...............................................................8

*City of Providence v. Aeropostale Inc. et al.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v. Pierson*, 607
  F. App'x. 73 (2d Cir. 2015), 2014 WL 1883494 ........................................................15

*Deangelis v. Corzine*,
  151 F. Supp. 3d 356 (S.D.N.Y. 2015)........................................................................8, 9

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..............................................................................9, 16, 19

*Diaz v. E. Locating Serv. Inc.*,
  No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ...............................11

*Dover v. British Airways, PLC (UK)*,
  No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513 (E.D.N.Y. Oct.
  9, 2018) ........................................................................................................................9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)....................................................................................................17

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................................18

*In re Adv. Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................20, 23

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................................17

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................11

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)..................................................................................................20

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) ..........................................................................................21

*In re Flag Telecom Holds., Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).............................................................................................21, 22

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)....................................................................................9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ..........................................................................................19

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ....................................................................................16, 23

*In re Oxford Health Plans, Inc., Sec. Litig.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ..........................................................................................21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................................10

*In re Petrobras Sec. Litig.*,
  No. 14-CV-9662 (JSR), 2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018), *aff'd*,
  778 F. App'x 46 (2d Cir. 2019)...............................................................................................6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................................8

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ..........................................................................................21

*In re Salomon Analyst Metromedia Litig.*,
  544 F.3d 474 (2d Cir. 2008)..................................................................................................22

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
  No. 3:09-CV-1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012) .....................13, 14

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970).............................................................................................................17

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...........................................15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)...............................................................................................................24

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..................................................................................................17

*Palacio v. E\*TRADE Fin. Corp.*,
   2012 WL 2384419 (S.D.N.Y. June 22, 2012) .......................................................................11

*Spagnuoli v. Louie's Seafood Rest., LLC*,
   No. 13-CV-4907 (JMA)(ARL), 2018 WL 7413304 (E.D.N.Y. Sept. 27, 2018) ...................11

*Torres v. Toback, Bernstein & Reiss LLP*,
   No. CV-11-1368 (NGG) (VVP), 2014 WL 988480 (E.D.N.Y. Mar. 14, 2014).....................24

*Towerview LLC v. Cox Radio, Inc.*,
   2013 WL 3316186 (Del. Ch. June 28, 2013) ........................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................................................8

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)....................................................................................................20

**Statutes**

15 U.S.C. § 78j(b) .........................................................................................................................19

15 U.S.C. § 78u-4(a)(4) ................................................................................................................15

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

Fed. R. Civ. P. 60(b)(2)..............................................................................................................4, 5

Fed. R. Civ. P. 62.1 ........................................................................................................................4

**Other Authorities**

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2021
   Review and Analysis* (Cornerstone Research 2022) ...............................................................19

William Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class
   Actions* (4th ed. 2002)............................................................................................................24

Co-Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC ("Co-Lead Plaintiffs" or "Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submit this memorandum of law in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated January 23, 2023 (the "Stipulation")[1]; (ii) preliminary certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; (iv) a date for a final settlement fairness hearing (the "Settlement Hearing") and deadlines for the mailing and publication of the Notice, for Settlement Class Member objections and exclusion requests, for the filing of Plaintiffs' motion for Final Approval of the Settlement, and for the filing of Co-Lead Counsel's application for an award of attorneys' fees and payment of Litigation Expenses and compensatory awards to Plaintiffs.

## I. PRELIMINARY STATEMENT

Plaintiffs have achieved a very favorable resolution of this litigation. The proposed Settlement will resolve all claims against Defendants in exchange for a sizable cash payment of $21,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.

By the time the Settlement was reached, Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and defenses. This case is particularly ripe for settlement given the long and winding path it has taken between this Court and the Second Circuit, through complex briefing and factual development that has given the Parties a sophisticated understanding of the key legal and factual issues. The $21 million Settlement is especially impressive because the Court has already dismissed the case, and it is still alive only because of

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Michael Grunfeld ("Grunfeld Declaration"), which is filed concurrently herewith.

Plaintiffs' dogged persistence in continuing to press their claims and raise newly discovered evidence from a Chinese regulatory proceeding, before this Court and the Second Circuit.

In particular, prior to reaching the Settlement nearly four years after this Action was initially filed, Co-Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of JA Solar filings with the U.S. Securities and Exchange Commission ("SEC"), and public reports concerning JA Solar; interviews with former employees and other potential witnesses with relevant information; and consultation with experts; (ii) drafted the initial and Consolidated Amended Class Action Complaint (the "Complaint"); (iii) briefed Defendants' motion to dismiss; (iv) briefed an appeal of the Court's dismissal of the case; (v) successfully moved for an indicative ruling upon discovery of new evidence; (vi) successfully briefed and argued, before the Second Circuit, a motion to remand the appeal to the Court to allow it to consider the newly discovered evidence; (vii) successfully moved for relief from judgment based upon the discovery of new evidence (viii) briefed whether the Second Circuit has jurisdiction to hear the Defendants' appeal of the decision granting relief from judgment; (ix) drafted a motion for leave to file a second consolidated amended complaint based upon the newly discovered evidence, and a second amended complaint; (x) drafted and exchanged extensive mediation statements; (xi) participated in two full-day mediation sessions, separated by over two years, before mediator Robert A. Meyer of JAMS; and (xii) engaged in negotiations regarding the terms of the proposed Settlement. The Settlement is without a doubt the result of arm's-length negotiations conducted by informed and experienced counsel, in conjunction with a well-respected mediator.  As discussed in greater detail below, Plaintiffs and Co-Lead Counsel believe that the proposed Settlement meets the standards for

preliminary approval and is in the best interests of the putative class.  Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. Procedural History of the Litigation

On January 17, 2019, the initial class action complaint was filed in this Court. (ECF No. 4). On March 8, 2019, the Court appointed Altimeo Asset Management and ODS Capital LLC as Co-Lead Plaintiffs for the consolidated action; and approved their selection of Pomerantz LLP and Labaton Sucharow LLP as Co-Lead Counsel. (ECF No. 15).

On June 14, 2019, Plaintiffs filed and served the Complaint alleging claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and also asserting claims against the Individual Defendants under Section 20(a) of the Exchange Act. (ECF No. 32).  Among other things, the Complaint alleged that Defendants violated Section 10(b) by making certain statements that Plaintiffs allege were false and misleading. This includes, *inter alia*, statements regarding: (i) Defendants' intention to relist the Company on any other stock exchange after completion of the Merger; (ii) Defendants' intention to keep the Company private; (iii) the value of the Company's securities leading up to the Merger; (iv) the fairness of the consideration exchanged in the Merger; and (v) the likelihood of the Merger being completed based on the number of securityholders that dissented from the Merger. The Complaint further alleged that the prices of JA Solar's securities were artificially depressed during the Class Period as a result of Defendants' alleged misstatements.

On January 13, 2020, Co-Lead Counsel and Defendants' Counsel participated in a full-day mediation session before Robert A. Meyer of JAMS, an experienced mediator. In advance of that session, the Parties exchanged detailed mediation statements and exhibits, which addressed the issues of both liability and damages. The Parties were unable to reach an agreement.

On February 28, 2020, Defendants filed their Motion to Dismiss. (ECF Nos. 54-56). On April 17, 2020, Plaintiffs filed their opposition to Defendants' Motion and on May 18, 2020, Defendants filed their reply in further support of their Motion. (ECF Nos. 64, 68).

On November 30, 2020, the Court dismissed the Complaint on the grounds that Plaintiffs did not "adequately plead violations of the Exchange Act on behalf of the Seller Shareholders and Tenderer Shareholders." (ECF Nos. 80-81). The Court found that Plaintiffs did not adequately plead falsity because they did not "plausibly allege that there was an actual, concrete plan to relist" at the time of the alleged misstatements. (ECF No. 80). As a result, the Court did not consider Plaintiffs' arguments regarding relisting plans and proposals when evaluating loss causation. (ECF 104 at 3). The Court found that Plaintiffs did not adequately plead loss causation as to the remaining alleged misstatements, because they "fail[ed] to establish a causal connection between (1) the misleading statements in the Proxy Materials and (2) the value of the Seller Shareholders' Securities during the class period." (ECF No 80). Additionally, the Court found that Plaintiffs did not adequately plead reliance on behalf of the tenderer shareholders because they "fail[ed] to demonstrate the open and developed market that would support market efficiency under the *Basic* presumption." (ECF No. 80). Plaintiffs appealed the Court's decision. (ECF No. 82).

Upon the revelation of newly discovered evidence, obtained from a Chinese Securities Regulatory Commission proceeding, Plaintiffs moved expeditiously for relief from judgment under Fed. R. Civ. P. 60(b)(2) and, because their appeal of the Court's dismissal was pending, for an indicative ruling under Rule 62.1. (ECF Nos. 83, 86, 89-92). The Court granted Plaintiffs' motion for an indicative ruling, holding the "newly discovered evidence raises a substantial issue that this Court should examine before the appeals court rules on the propriety of the dismissal." (ECF No. 96). After being notified of this ruling, the Second Circuit granted Plaintiffs' Motion to

Remand to allow the District Court to consider the issues raised in its order. (ECF No. 97).

Once this matter was remanded, the Court granted Plaintiffs' Rule 60(b)(2) motion because "the newly discovered evidence warrants relief from judgment as it would probably . . . change[] the outcome of the Court's prior ruling on falsity" and "also affects my prior ruling on the loss causation element of Plaintiffs' claims." (ECF Nos. 104 at 3). Defendants appealed this ruling (ECF No. 105). At the Second Circuit's direction, the Parties proceeded to brief whether the Second Circuit has jurisdiction to hear the Defendants' appeal (Appellate Dkt Nos. 53 and 53[2]).

On September 20, 2022, Co-Lead Counsel and Defendants' Counsel participated in a second full-day mediation session before the same experienced mediator. In advance of this session, the Parties again exchanged detailed mediation statements and exhibits.  The Parties were unable to reach an agreement during the mediation session.

On September 23, 2022, Plaintiffs filed a motion for leave to file the Second Amended Complaint ("SAC") based on the newly discovery evidence (ECF Nos. 107-109).

On November 4, 2022, after continuing to negotiate following the mediation, the Parties reached an agreement in principle to settle the Action for $21,000,000, which was memorialized in a Confidential Settlement Term Sheet ("Term Sheet") executed on December 1, 2022.

**B.  Summary of Key Aspects of the Proposed Settlement**

**1.   Relief to Settlement Class Members and Release of Claims**

Defendants have agreed to settle the Action for a payment of $21,000,000, as described more fully in the Stipulation, in return for which all claims that have been, or could have been, asserted in the Action ("Released Plaintiffs' Claims") against Defendants and the other Released Defendant Parties will be forever dismissed, barred and released.

---

[2] All Appellate Dkt. cites referenced herein are to the docket of Case No.: 20-4268 in the Second Circuit.

### 2. Notice and Settlement Administration

As explained below and set forth in the proposed Preliminary Approval Order, within 10 business days of the Court's entry of Preliminary Approval, the proposed Notice and Claim Form, substantially in the forms set forth in Exhibits A-1 and A-2 to the Stipulation, will be mailed to each Settlement Class Member identified by records maintained by JA Solar's transfer agent, as well as to institutional nominees that usually maintain custodial accounts. A Summary Notice will also be published in *The Wall Street Journal* and be transmitted over the *PR Newswire*.

The Notice describes in plain English the terms of the Settlement, the considerations that led Co-Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation for the distribution of the proceeds of the Settlement, the maximum attorneys' fees and Litigation Expenses that may be sought, including the proposed compensatory award to Plaintiffs. The Notice will also set forth the date of the Settlement Hearing, as well as procedures for objecting to the foregoing matters, opting out of the Settlement Class, and submitting claims. A copy of the Notice, Claim Form and Stipulation will also be posted on a website that the Claims Administrator maintains.

After competitive bidding, Co-Lead Counsel selected KCC Class Action Services, LLC (the "Claims Administrator") to administer the notice and claims. The Claims Administrator is well known and highly experienced in securities-fraud-class-action settlement administration.

### 3. Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so no later than 21 calendar days prior to the Settlement Hearing, and must send copies of such objections to the Court, as well as Co-Lead Counsel and Defendants' Counsel.  To ensure the legitimacy of any such objections, the objector must file documents evidencing transactions in JA Solar Securities, as well as submit to the jurisdiction of this court for possible deposition. *See In*

*re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2018 WL 4521211, at \*4 (S.D.N.Y. Sept. 21, 2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019) (sanctioning objector).

### 4. Requests for Exclusion

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by JA Solar transaction documentation, such that it is received no later than 21 calendar days prior to the Settlement Hearing.  The opt-out must be sent to the Claims Administrator (but not the Court).

### 5. Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members who sold or exchanged a previously negotiated amount of JA Solar Securities elect to opt out of the Settlement Class.  The threshold amount is set forth in a separate, confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement").  Stipulation ¶ 41. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.  The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

In the event that the Settlement is not approved by the Court, or does not become final due to any appeals or Defendants' withdrawal from the Settlement, the Parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

### 6. No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Standards for Preliminary Approval

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019).[3] Where, as here, the Parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. *See* Fed. R. Civ. P. 23(e).  As the Second Circuit has held:

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both [its] terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement "may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  The approval process typically takes place in two stages. *See Deangelis v. Corzine*, 151 F. Supp. 3d 356, 357 (S.D.N.Y. 2015).  First, a court provides preliminary approval of the settlement and authorizes notice of the

---

[3] All emphasis is added and all internal quotation marks, citations, and brackets are omitted unless otherwise noted.

settlement be given to the class. *Id.* at 357, Fed. R. Civ. P. 23(e)(1). Second, and only if the Court grants this motion, "the court holds a fairness hearing to 'determine whether the settlement's terms are fair, adequate, and reasonable.'" *Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513, at *8 (E.D.N.Y. Oct. 9, 2018).

In determining whether notice should be provided to the class, the reviewing court considers whether the court "*will likely be able to*" finally approve the settlement, given the factors enumerated in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

| | | |
|---|---|---|
| (A) | class representatives and counsel have adequately represented the class; | |
| (B) | the proposal was negotiated at arm's length; | |
| (C) | the relief provided for the class is adequate, taking into account: | |
| | (i) | the costs, risks, and delay of trial and appeal; |
| | (ii) | the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; |
| | (iii) | the terms of any proposed award of attorney's fees, including timing of payment; and |
| | (iv) | any agreement required to be identified under Rule 23(e)(3);[4] and |
| (D) | the proposal treats class members equitably relative to each other. | |

Fed. R. Civ. P. 23(e)(2).[5] The Rule 23 amendment, which became effective in December 2018, has not changed the overall standard for approving a settlement, *i.e.* whether or not the settlement is fundamentally fair, adequate, and reasonable. Prior to the amendment, "Rule 23 did not specific a standard, and courts in the Second Circuit interpreted Rule 23 to only require the settlement to be 'within the range of possible final approval.'" *In re GSE Bonds Antitrust Litig.,* 414 F. Supp.

---

[4] The Term Sheet, Stipulation and Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

[5] In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's long-standing approval factors set out in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), many of which overlap with the Rule 23 factors.

3d 686, 692 (S.D.N.Y. 2019).  Under the amendment, "a district court must consider whether the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  The proposed Settlement here satisfies all these factors and should be preliminarily approved.  *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

**B.  Approval of the Settlement is Likely Under Rule 23(e)(2)**

**1.    Plaintiffs and Co-Lead Counsel Have Zealously
Represented the Settlement Class**

Plaintiffs and Co-Lead Counsel have zealously prosecuted the Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits.  Plaintiffs have been active and informed participants in the litigation by regularly communicating with Co-Lead Counsel, evaluating the Settlement Class's and Defendants' best arguments concerning liability and damages, consulting with Co-Lead Counsel concerning the settlement negotiations, and approving the terms of the Settlement. Plaintiffs' decision to settle this case was informed by a thorough investigation of the relevant claims including an exhaustive analysis of public documents in both English and Chinese, as well as confidential witness interviews and consultation with experts, prior to filing the Complaint; extensive briefing on the motion to dismiss; an appeal of the Court's decision on the motion to dismiss; briefing and obtaining relief from judgment and for an indicative ruling while the appeal was pending; successfully obtaining a remand from the Second Circuit following the Court's order on the motion for an indicative ruling; briefing whether the Second Circuit has jurisdiction to hear Defendants' appeal of the Court's decision granting Plaintiffs' motion for relief from judgment; filing a motion for leave to file a proposed SAC, including the proposed SAC that contained substantial new allegations related to the elements of falsity, loss causation, and reliance; and

participation in a robust and arm's-length mediation process.  The Settlement is demonstrably the product of well-informed and vigorous advocacy on behalf of Settlement Class Members.

Only after all of these complicated steps were the Parties in a position to, in their second round of mediation, reach a settlement.  During the mediation process, the Parties also drafted extensive mediation statements, which illuminated the relative strengths and weaknesses of the Parties' positions and informed Plaintiffs and Co-Lead Counsel.  *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement, . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.").

### 2.     The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."  *Spagnuoli v. Louie's Seafood Rest., LLC*, No. 13-CV-4907 (JMA)(ARL), 2018 WL 7413304, at *3 (E.D.N.Y. Sept. 27, 2018). "The Court [also] gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.*; *Palacio v. E*TRADE Fin. Corp.*, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012)); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010).

The Settlement was reached through arm's-length negotiation, which included two all-day mediations, separated by over two years of hard-fought litigation, before a respected and experienced mediator.  In advance of those sessions, the Parties exchanged, and provided to the mediator, detailed mediation statements and exhibits that addressed liability and damages issues.

During the mediation sessions, both sides had detailed discussions about the merits of Plaintiffs' claims and the defenses to those claims. The negotiations, though collegial, were adversarial. Though Plaintiffs believe that the claims asserted in the Action have merit and that the evidence developed to date supports their claims, the negotiations were informed in part by the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals, the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, and the difficulties and delays inherent in such litigation.

In negotiating the Settlement, Plaintiffs had the benefit of attorneys at Pomerantz and Labaton who are highly experienced in complex litigation and familiar with the issues of the case.

### 3.      The Settlement Provides Significant and Certain Benefits

The Settlement provides for a certain near-term recovery of $21 million to be allocated among Settlement Class Members following the deduction of Court-approved fees and expenses. In contrast, if the Action continued, the hurdles faced by the Settlement Class would be substantial. The Settlement provides the Settlement Class with substantial relief, without the delay and expense of trial and post-trial proceedings.  Due to the inherent complexity of securities litigation, and particularly the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Exchange Act, as well as supervening case law developments, prosecution of securities class action litigation is inherently complex and lengthy.

If the Parties did not agree to settle, they would have faced the risk associated with Plaintiffs' pending motion for leave to file the proposed SAC, Defendants' future Motion to Dismiss if Plaintiffs' motion were to be granted, and Defendants' pending appeal of the Court's Order granting Plaintiffs' relief from judgment. If Plaintiffs prevailed on all of these steps, the Parties would then face an expensive discovery process, briefing of class certification and summary judgment, and a trial with an uncertain outcome. Not only would *any* recovery be very

uncertain, considering the near-certainty of appeals—including the appeals by both Plaintiffs and Defendants that have already been filed—it would inevitably be delayed by years. The jury would have had to determine numerous complex securities law issues and navigate battles of the experts regarding market efficiency, loss causation, and damages.

In addition, during a trial, the jury would have had to determine: (i) whether Defendants made false and misleading statements; (ii) whether the alleged misrepresentations and omissions were material; (iii) whether Defendants acted with scienter; (v) whether JA Solar Securities traded in an efficient market, entitling Plaintiffs to a presumption of reliance on behalf of both the seller shareholders and tendering shareholders; and (vi) whether, and to what extent, the fair value of JA Solar Securities when the Merger Proxy was issued was greater than the Merger price.

Despite Co-Lead Counsel's confidence, there are significant risks to proving falsity, loss causation, and damages, and establishing reliance—particularly because the Court has already dismissed the case on each of these grounds. Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain. *See Id.*; *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09-CV-1293 (VLB), 2012 WL 3589610, at *6 (D. Conn. Aug. 20, 2012).

### 4.    The Proposed Method for Distributing Relief Is Effective

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator.  The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Loss" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net

Settlement Fund.  *See* Stipulation ¶ 24.  Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims.  *Id*. ¶ 30(d)-(e).  Any claim disputes that cannot be resolved will be presented to the Court for a determination.  *Id*.

After the Settlement reaches its Effective Date (*id*. ¶ 39) and the claims process is complete, Authorized Claimants will be issued payments.  *Id.* ¶ 26. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  At this point, if there are unclaimed funds, such funds will be contributed to Consumer Federation of America, or such other private, non-profit, non-sectarian 501(c)(3) organization designated by Plaintiffs and approved by the Court.  *Id*. ¶ 27.[6]

### C.  The Settlement Does Not Excessively Compensate Co-Lead Counsel

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Co-Lead Counsel files a motion, on behalf of all Plaintiffs' Counsel, for attorneys' fees and expenses.  The Settlement does not contemplate any specific award.  Co-Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants.  As set forth in the Notice, Co-Lead Counsel will apply for an award

---

6 Consumer Federation of America ("CFA") is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education before the judiciary, Congress, the White House, federal and state regulatory agencies, and state legislatures.  See www.consumerfed.org. CFA has an Investor Protection program that works nationwide to promote policies that safeguard investors against fraud through: (i) the development of educational material; (ii) drafting policies and legislation; (iii) and providing testimony and comments on legislation and regulations. See www.consumerfed.org/issues/ investor-protection. CFA has been approved as a cy pres beneficiary in numerous securities settlements, including In re Broadcom Corp. Sec. Litig., No. 01-CV-00275-MLR (C.D. Cal.), DePalma v. Rent-A-Center, et al., No. 16-CV-00978, ECF No. 130 (E.D. Tex.).

of attorneys' fees on behalf of all Plaintiffs' Counsel of up to 33.4% of the Settlement Fund, plus expenses incurred in connection with the prosecution and resolution of this Action and compensatory awards to Plaintiffs, in an amount not to exceed $500,000, plus accrued interest. The expense request may include a request for the costs and expenses (including lost wages) of Plaintiffs directly related to their participation in the Action, pursuant to the PSLRA. *See* 15 U.S.C. § 78u-4(a)(4).  This fee request is reasonable and within the range of fee awards in this District. *See, e.g.*, *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *City of Providence v. Aeropostale Inc. et al.,* 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015), 2014 WL 1883494, at *20 (awarding 33% of $15 million settlement).

### D.  All Settlement Class Members Are Treated Equitably Relative to One Another

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable and adequate because it treats Plaintiffs or other Settlement Class Members fairly.  The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants.  Each Authorized Claimant, including Plaintiffs, will receive a *pro rata* distribution pursuant to the formulas for calculating Recognized Losses.  Plaintiffs, like all Settlement Class Members, will be subject to the same formulas for distribution of the Settlement.

**E.     The Proposed Settlement Will Meet the Additional *Grinnell* Factors**

*The Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement*.  The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. *See supra* § III.B.3.

*The Reaction of the Settlement Class to the Settlement*.  After notice is issued to the Settlement Class, Plaintiffs will advise the Court of the class's reaction.

*The Stage of the Proceedings*.  Plaintiffs' and their counsel's knowledge of the merits and potential weaknesses of the claims support the Settlement, as discussed above.  The stage of the litigation permitted Plaintiffs and their counsel to carefully weigh the strengths and weaknesses of their case and to engage in effective settlement discussions.  *See Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information."). This factor strongly supports preliminary approval of the Settlement.

*The Risk of Establishing Liability and Damages*.  The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  *See supra* § III.B.3.

*The Risks of Maintaining the Class Action Through Trial*.  In deciding a motion for class certification, the Settlement Class would face the risk of arguments by Defendants regarding any potential factual dissimilarity of claims asserted by Plaintiffs and putative class members.  If successful, the defense would mandate individual lawsuits, hoping to incur minimal amounts of damages accrued.  Moreover, even if a class were certified over Defendants' objection, it would face multiple risks in proving the class-wide nature of Defendants' securities law violations at trial.

To be entitled to class certification, Plaintiffs must show that common issues predominate over individual ones. If not for Defendants' consent to certify the Settlement Class, Plaintiffs would have to meet their burden by showing that JA Solar Securities traded on an efficient market, entitling seller shareholders to the presumption of reliance on Defendants' materially false

statements.[7] Under *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258 (2014), Defendants would have been permitted to rebut the presumption by proving that there was no price impact. While it is not unusual for courts to certify securities class actions, it is not automatic. The law governing certification of securities class actions has been in constant flux, as evidenced by *Halliburton* and the ensuing uncertainty.  Thus, without a settlement, even assuming the evolving law does not change further, the Settlement Class risked that certification would be denied.

      ***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation***.  The adequacy of the settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness," which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs . . . inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

      Here, the Settlement provides for a recovery of $21 million. Plaintiffs' consultation with their expert indicated that, based on the allegations in the Complaint, maximum class-wide damages for JA Solar shareholders that tendered their ADS or shares in the Merger were approximately $408 million.[8] The $15.75 million of the $21 million Settlement that is allocated to

---

[7] For the Tendering shareholders, Plaintiffs would have had to convince the Court or the Second Circuit that reliance was satisfied based on one of several independent bases that Plaintiffs have set out. While the Court initially dismissed the Tenderer claims, Plaintiffs actually have more avenues to satisfy the reliance element for them because in addition to being entitled to the presumptions of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), they have argued that reliance for the Tenderers is satisfied under *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), which the Second Circuit was particularly interested in during oral argument on Plaintiffs' motion to remand. (ECF No. 98-1).

[8] Plaintiffs' fair value assessment is based on the difference between JA Solar's valuation in the Merger of approximately $360 million and the value attributed to it shortly after the Merger, in press accounts of JA Solar's relisting plan, of $1.1 billion. (ECF No. 109-1, Complaint ¶ 158). Per share damages of $15.70 per ADS are based on the difference between (1) a fair value of $23.25 per ADS and (2) the Merger price of $7.55 per ADS. There were 26

these shareholders is approximately 3.86% of their damages.[9]

That said, the appropriate model for estimating damages was highly contested by the Parties, more so than is often the case in securities class actions. This case raises complicated issues with respect to the central theory of loss causation, namely that investors were induced to sell JA Solar Securities for less than fair value, upon Defendants' misrepresentations—in contrast to the more standard securities fraud claim that investors bought a company's stock at *inflated* prices. These facets of the case led Defendants to argue that Plaintiffs failed to allege any losses that resulted from Defendants' actions. *See* ECF Nos 55 and 68. Indeed, the Court has already dismissed the case on similar grounds. *See* ECF No. 80. While Plaintiffs are confident they would ultimately prevail—either on their proposed SAC (ECF No. 109-1) or before the Second Circuit (Case No. 20-04268)—on their theory of loss causation, which must be assessed in the context of going-private transactions, the fact that the Court initially rejected their claims based on the element of loss causation shows how favorable the $21 million recovery is for the class.

In addition, even if Plaintiffs were to prevail with respect to the existence of damages, the specific amount at issue would be highly contested because it would be based on expert valuations of JA Solar's fair value at the time of the Merger. This "task of enterprise valuation, even for a finance expert, is fraught with uncertainty." *Towerview LLC v. Cox Radio, Inc.*, 2013 WL 3316186, at *23 n.171 (Del. Ch. June 28, 2013); *see also Hicks v. Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (noting that "'battle of the experts' as to proper methods of valuation

---

million ADS that were tendered in the Merger and are potentially eligible to recover in the Settlement, which yields total overall damages of approximately $408 million.

9 The Settlement also allocates 20% to Settlement Class Members that sold shares during the Class Period, before the Merger closed. These shareholders, which include Lead Plaintiffs, are receiving a smaller portion of the Settlement and of their estimated damages because, among other reasons, the potential evidence of the relisting plan at issue here is stronger later in the Class Period (*see, e.g.*, ECF No. 104 at 3), the tendering shareholders have more ways to establish the element of reliance (*see supra* at 17 n.7), and it would be more difficult for the sellers to establish their full measure of damages.

. . . creates a significant obstacle to plaintiffs in establishing liability"). The battle of the experts here would be more uncertain than in a typical stock drop case, where damages are based on the precise amount that a company's stock fell upon revelation of the fraud. Moreover, in a stock-drop case, maximum damages are typically capped at the portion of company's value that the stock price fell. In a defrauded seller case, in contrast, maximum damages can be vast because a company can be undervalued by many multiples of its present value. For example, Plaintiffs allege JA Solar was undervalued by approximately 200%. Obtaining damages approaching the full measure on this basis is significantly more difficult than when damages are measured from a lower baseline.

As such, the Settlement falls well within the range that courts commonly approve. *See, e.g.*, *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages"); *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why satisfactory settlement could not amount to a hundredth or even a thousandth" of a "single percent of the potential recovery.").

Additionally, the Settlement is greater than the median value of securities class action settlements in actions asserting claims under Section 10(b) of the Exchange Act.  For the ten years from 2012 through 2021, the median settlement in Section 10(b) cases was $7.9 million and $8.3 million in 2021. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2021 Review and Analysis*, at 1, 6 (Cornerstone Research 2022) (for cases with total estimated damages ranging from $250 million to $499 million, median settlements from 2012 to 2020 were 4.1% of total estimated damages and 4.9% in 2021) (Grunfeld Decl., Ex. 2).

## IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.   The Settlement Class Meets the Requirements of Rules 23(a) and 23(b)(3)

In granting preliminary settlement approval, the Court should certify the Settlement Class

for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the parties, consists of: "all Persons who sold JA Solar Securities, and were damaged thereby, during the period from November 20, 2017 through July 16, 2018 (the effective date of the Merger), inclusive, and all Persons whose JA Solar Securities were cancelled or tendered in exchange for the right to receive the Merger consideration." *See* Stipulation at ¶ 1(jj).

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243 (2d Cir. 2012); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, the Court should determine that the proposed Settlement Class is a proper class for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation (Fourth)* § 21.632. To certify a class, the Court must determine whether four threshold requirements of Federal Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613-14. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). *Id.* In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

### 1. The Settlement Class Satisfies the Requirements of Rule 23(a)

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). That is presumed to be the case "when a putative class exceeds 40 members." *In re Adv. Battery Techs., Inc. Sec. Litig.,* 298 F.R.D. 171, 181 (S.D.N.Y. 2014). Impracticable does not mean impossible, but only that the difficulty or inconvenience of joining all class members makes

use of the class action mechanism appropriate.  *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).

"While a precise quantification of the class is not required, some evidence or a reasonable estimate of the number of class members must be provided."  *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006).  In making this determination, "the court may make some common sense assumptions and rely on reasonable inferences."  *Id.* at 351. Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."  *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  With approximately 48 million JA Solar ADS outstanding at the end of the Class Period and an average daily trading volume in the U.S. of 551,234 ADS during the Class Period, individual joinder is impracticable and the numerosity requirement is clearly satisfied.

The proposed Settlement Class also meets the commonality requirement of Rule 23(a). Commonality is "applied permissively by courts in the context of securities fraud litigation, and minor variations in the class members' positions will not suffice to defeat certification." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015) (collecting cases). The requirement is met if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Securities fraud class actions are "essentially course of conduct cases because the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action."  *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000)

Plaintiffs also meet Rule 23(a)'s typicality requirement.  A claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove" liability.  *In re Flag Telecom Holds., Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  Like all

Settlement Class Members, Plaintiffs directly relied on, or are entitled to a presumption of reliance as to, Defendants' alleged misstatements that violated the Exchange Act.  There are no facts concerning Plaintiffs that render them atypical as compared to other Settlement Class Members.

Lastly, Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'"  *Flag Telecom*, 574 F.3d at 35 (quoting *Amchem*, 521 U.S. at 625).  Plaintiffs adequately represent the Settlement Class as they have no individual interests or claims that are antagonistic to the Settlement Class and have zealously represented the Settlement Class's interests to date, including by monitoring the pleadings and authorizing Co-Lead Counsel's mediation and settlement efforts.

### 2.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Finally, the proposed Settlement Class meets the requirements of Rule 23(b)(3).  This rule authorizes class certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the" action.

To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008).  This inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Id.*

There are questions of law and fact common to the Settlement Class that predominate over any individual questions. This includes whether Defendants' alleged actions, which were centralized and uniform, violated federal securities laws, including whether they were committed with a motive to commit fraud or through knowing or reckless conduct.

"Together with predominance, the superiority requirement ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Adv. Battery Techs.*, 298 F.R.D. at 182.

A class action is also superior to other methods for the fair and efficient adjudication of this case. Securities suits easily satisfy the superiority requirement because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration" that follows. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015). Settlement Class Members are not likely, and many do not have an interest or means, to prosecute an individual case against Defendants, who are represented by a top-tier, well-staffed law firm expert in the field of securities litigation. In addition, concerns for efficiency and economy support resolving the issues in one suit before this Court now.

### B.  Nationwide Class Certification is Appropriate for Settlement Purposes

It is appropriate to settle the claims of all Settlement Class Members in one action because their claims are all subject to the terms of a single federal statute, 15 U.S.C. § 78, *et seq*.

### C.  The Court Should Appoint Co-Lead Counsel as Counsel for the Settlement Class

A court that certifies a class must also appoint class counsel. Rule 23(g) states that the adequacy of counsel is determined by four factors: (1) the work counsel has done in investigating potential claims; (2) counsel's class action experience; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Co-Lead Counsel Pomerantz and Labaton have extensive experience and stellar reputations in class actions and securities litigation. (Grunfeld Decl., Exs. 3-4 (Firm Resumes)). Pomerantz and Labaton have been appointed as lead or co-lead counsel in many complex securities class actions, and have recovered substantial amounts of money for clients and class members.

## V.    THE COURT SHOULD APPROVE THE PROPOSED FORM
### AND METHOD OF NOTICE

The proposed Notice and Summary Notice, attached as Exhibits 1, and 3 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA.  "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *See Manual for Complex Litigation (Fourth)* § 21.312.  To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity" to object. *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950).

The proposed Notice, which the Claims Administrator will send to potential Settlement Class Members by first class mail, describes in plain English the Settlement's terms, the considerations that led Co-Lead Counsel to conclude it is fair and adequate, the maximum attorneys' fees and expenses that may be sought, the procedures for objecting to the Settlement, requesting exclusion, or submitting a Claim Form, and how to attend the final Settlement Hearing.

With the Court's permission, the Claims Administrator will commence mailing the Notice to Settlement Class Members identified by JA Solar's transfer agent within 10 business days of Court entry of the Preliminary Approval Order, and mail the Notice to shareholders identified in requests to nominees as soon thereafter as addresses are received. The Summary Notice will be published in *The Wall Street Journal* and be transmitted by *PR Newswire* within 14 days thereafter.

Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. *Newberg* § 8.04; *Torres v. Toback, Bernstein & Reiss LLP*, No. CV-11-1368 (NGG) (VVP), 2014 WL 988480, at *12 (E.D.N.Y. Mar. 14, 2014),

*report and recommendation adopted in part, rejected in part*, No. 11-CV-1368 (NGG) (VVP), 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014) (approving mailed notice to last known addresses). The Court should approve the proposed form of Notice and direct that notice be provided.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events in connection with the Settlement as set forth in the proposed Preliminary Approval Order (Exhibit A to the Stipulation) filed herewith:

| Event | Proposed Timing |
|---|---|
| Date for Settlement Hearing. | Approximately 100 days after the Court enters the Preliminary Approval Order. (Preliminary Approval Order ¶ 5) |
| Mailing of Notice and Proof of Claim and Release. | No later than 10 business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 8) (the "Notice Date") |
| Publication of Summary Notice. | No later than 14 calendar days after the Notice Date (Preliminary Approval Order ¶ 11) |
| Submission deadline for requests for exclusion. | Received no later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 15) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and the application for attorneys' fees and payment of expenses. | No later than 35 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |
| Filing deadline for objections. | Received no later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 18) |
| Date for Co-Lead Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and the application for attorneys' fees and payment of expenses. | Seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |
| Date for Claims to be Filed | Postmarked no later than 5 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 13(a)) |

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and enter the Preliminary Approval Order.

DATED: January 23, 2023

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman* _____
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
     mgrunfeld@pomlaw.com

*Counsel for Co-Lead Plaintiff*
*Altimeo Asset Management*
*and Co-Lead Counsel for the Class*

**LABATON SUCHAROW LLP**

Carol C. Villegas
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
     jbissell-linsk@labaton.com

*Counsel for Co-Lead Plaintiff*
*ODS Capital LLC, and*
*Co-Lead Counsel for the Class*

**THE LAW OFFICE OF**
**JO ANN PALCHAK, P.A.**
Jo Ann Palchak
1725 1/2 7th Ave.,
Suite 6 Tampa, FL 33605
Telephone: (813) 468-4884
Email: jpalchak@palchaklaw.com

*Counsel for Co-Lead Plaintiff*
*ODS Capital LLC*