UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODS CAPITAL LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>      vs.<br><br>JA SOLAR HOLDINGS CO., LTD., BAOFANG JIN, and SHAOHUA JIA,<br><br>             Defendants. | Case No.  1:18-cv-12083-ALC<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 3

I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
     ADEQUATE, AND WARRANTS FINAL APPROVAL ................................. 3

     A.   The Law Favors and Encourages Settlement of Class Action Litigation .................... 3

     B.   The Standards for Final Approval ............................................................ 4

     C.   Co-Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the
          Settlement Class .............................................................................. 6

     D.   The Settlement Was Reached After Robust Arm's-Length Negotiations .................... 7

     E.   The Relief Provided by the Settlement Is Adequate ........................................ 8

          1.   The Complexity, Expense, and Likely Duration of the Litigation
               Support Approval of the Settlement ................................................ 8

          2.   The Risks of Establishing Liability and Damages Support
               Approval of the Settlement ...................................................... 10

               (a)   Risks Related to Proving Liability ................................... 11

               (b)   Risks Related to Proving Loss Causation and Damages .............. 11

               (c)   The Risks of Achieving and Maintaining Class Certification ....... 14

     F.   The Effective Process for Distributing Relief to the Settlement Class ................... 16

     G.   The Requested Attorneys' Fees and Expenses Are Reasonable ........................... 17

     H.   The Relief Provided in the Settlement Is Adequate Taking Into Account All
          Agreements Between the Parties Related to the Settlement ............................... 17

     I.   Application of the Remaining *Grinnell* Factors Support Approval .......................... 18

          1.   The Ability of Defendants to Withstand a Greater Judgment ..................... 18

          2.   The Reaction of the Settlement Class to Date ................................... 18

i

3.      The Stage of the Proceedings and the Amount of Information
        Available to Counsel Support Approval of the Settlement........................19

4.      The Range of Reasonableness of the Settlement Amount in Light
        of the Best Possible Recovery and All the Attendant Risks of
        Litigation Support Approval of the Settlement.........................................20

II.     THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE
        SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE
        APPROVED ................................................................................................21

III.    NOTICE SATISFIED RULE 23 AND DUE PROCESS ...................................24

CONCLUSION...................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ............................................................................10

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)............................................................................................15

*City of Detroit v. Grinnell Corp.*,
  495 F. 2d 448 (2d Cir. 1974), abrogated on other grounds by *Goldberger v.
  Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ........................................... *passim*

*City of Providence v. Aeropostale Inc. et al.*,
  No. 11-cv-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot
  v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) .............................................................8

*Ebbert v. Nassau Cnty.*,
  No. 05-5445, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011)..................................16

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
  141 S. Ct. 1951 (2021)........................................................................................15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)......................................................................................14, 15

*Hicks v. Morgan Stanley*,
  No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).........................13, 21

*In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012).....................................................5, 9, 18, 21

*In re Citigroup Inc. Sec. Litig.*,
  No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ..................4

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F.
  App'x. 37 (2d Cir. 2016) .......................................................................................7, 9

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...............................21

*In re Frontier Commc'ns Corp. S'holders Litig.*,
  No. 17-cv-01617, 2022 WL 4080324 (S.D.N.Y. May 20, 2022) ...........................19

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................24

*In re Gilat Satellite Networks*, *Ltd.*,
   No. 02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ..................................9

*In re GSE Bonds Antitrust Litig.*,
   No. 19-CV-1704 (JS), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019)......................8

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   No. 18-8472, 2022 WL 2063864 (S.D.N.Y. June 8, 2022) ...................................5

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................14, 21, 22

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)..............................................................9, 21

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..............................25

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)............20, 22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)........................................................................5, 8

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) .........................................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16-cv-6728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)..............................9

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................10, 11, 14

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05-cv-01695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)........................7, 18

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06-cv-11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009)............................19

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 3:09–cv–00419, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)........................21

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)........................................................................................15

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)..........................................................................................20

*Pearlstein v. Blackberry Ltd.*,
    No. 13 Civ. 7060 (CM), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ...................................4

*Puddu v. 6D Global Tech., Inc.*,
    No. 15-8061, 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ...................................19

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ..........................................................................10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................9

*Tchrs. Ret. Sys. of La. v. A.C.L.N. Ltd.*,
    No. 01-cv-011814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................20

*Towerview LLC v. Cox Radio, Inc.*,
    CA No. 4809-VCP, 2013 WL 3316186 (Del. Ch. June 28, 2013) ..........................................13

*Vataj v.* Johnson, No. 19-cv-06996, 2021 WL 1550478  (N.D. Cal. Apr. 20, 2021) ...................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).........................................................................3, 4, 7, 24

**Statutes**

15 U.S.C. § 78j(b)........................................................................................21

15 U.S.C. §78u-4(a)(4) ...............................................................................1, 9

15 U.S.C. § 78u-4(a)(7) ..............................................................................25

PSLRA ....................................................................................................6

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................16

Fed. R. Civ. P. 23(b)(3)..............................................................................16

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................25

Fed. R. Civ. P. 23(e) ...................................................................... *passim*

Court-appointed Co-Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC ("Co-Lead Plaintiffs" or "Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submit this memorandum of law in support of their motion for: (i) final approval of the proposed Settlement of the above-captioned action (the "Action"); (ii) approval of the proposed Plan of Allocation for distribution of the Net Settlement Fund, with the modification discussed below; and (iii) final certification of the Settlement Class.[1]

## PRELIMINARY STATEMENT

As set forth in the Stipulation, Co-Lead Plaintiffs have agreed to settle all claims asserted, or that could have been asserted, against the Released Defendant Parties in exchange for $21,000,000 (the "Settlement Amount"), for the benefit of the Settlement Class.  The terms of the Settlement are detailed in the Stipulation, which was executed on January 23, 2023.  ECF No. 120-1.  The Settlement Class is comprised of all Persons who sold JA Solar Securities, and were damaged thereby, during the period from November 20, 2017 through July 16, 2018 (the effective date of the Merger), inclusive, and all Persons whose JA Solar Securities were cancelled or tendered in exchange for the right to receive the Merger consideration.  *See* Stipulation at ¶ 1(jj).

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated January 23, 2023 (the "Stipulation", ECF No. 120-1).  Citations to "¶" in this memorandum refer to paragraphs of the Joint Declaration of Michael Grunfeld and Jake Bissell-Linsk in Support of: (I) Co-Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Payment of Litigation Expenses, and Awards to Co-Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Joint Declaration" or "Joint Decl."), filed herewith, unless otherwise noted.

All exhibits are annexed to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself.

As described below and in the accompanying Joint Declaration, the decision to settle was well-informed by nearly four years of hard-fought litigation that involved, *inter alia*: (i) a comprehensive investigation that included a review and analysis of JA Solar filings with the U.S. Securities and Exchange Commission ("SEC"), public reports concerning JA Solar, interviews with former employees of JA Solar and other potential witnesses with relevant information, and consultation with experts; (ii) drafting the 108-page amended Complaint; (iii) briefing Defendants' motion to dismiss; (iv) briefing an appeal of the Court's dismissal of the case; (v) successfully moving for an indicative ruling upon uncovering newly discovered evidence; (vi) successfully briefing and arguing, before the Second Circuit, a motion to remand the appeal to the Court to allow it to consider the newly discovered evidence; (vii) successfully moving for relief from judgment based upon the newly discovered evidence; (viii) briefing whether the Second Circuit had jurisdiction to hear Defendants' appeal of the decision granting relief from judgment; (ix) drafting and filing a motion for leave to file a second consolidated amended complaint based upon the newly discovered evidence, including a proposed second amended complaint; (x) drafting and exchanging extensive mediation statements; (xi) participation in two full-day mediation sessions, separated by over two years, before mediator Robert A. Meyer of JAMS; and (xii) engaging in negotiations regarding the terms of the proposed Settlement. *See generally* Joint Decl. at §§I-II.

Co-Lead Counsel, whom have extensive experience and expertise in prosecuting securities class actions, believe that the Settlement represents a very favorable resolution of this complex litigation in light of the specific risks of continued litigation, particularly the risks of prevailing on Co-Lead Plaintiffs' pending motion for leave to file the proposed Consolidated Second Amended Class Action Complaint ("SAC") and Defendants' future motion to dismiss if

Co-Lead Plaintiffs are allowed to file the SAC, as well as Defendants' pending appeal of the Court's Order granting Plaintiffs relief from judgment. Even if Co-Lead Plaintiffs prevailed in all of these steps, the Parties would then face a lengthy and expensive discovery process, briefing of class certification and summary judgment motions, and a trial with an uncertain outcome. Not only would *any* recovery at trial be very uncertain, with the near-certainty of appeals—including the appeals by both Plaintiffs and Defendants that have already been filed—it would inevitably be delayed by years.

Co-Lead Plaintiffs, sophisticated institutional investors that were actively involved throughout the Action, diligently represented the class and have approved the Settlement. *See* Declaration of Bernard Delattre submitted on behalf of Altimeo, Ex. 6 and Declaration of Hilary Shane submitted on behalf of ODS, Ex. 7. Accordingly, Co-Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement.

In addition, it is respectfully requested that the Court approve the proposed Plan of Allocation, with a modification as to the treatment of swaps, which is discussed below. The Plan, which was developed by Co-Lead Counsel with the assistance of Co-Lead Plaintiffs' consulting damages expert, is a fair and reasonable method for distributing the Net Settlement Fund and should also be approved by the Court.

## <u>ARGUMENT</u>

## I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

### A.   The Law Favors and Encourages Settlement of Class Action Litigation

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly

in the class action context.'"); *see also Pearlstein v. Blackberry Ltd.*, No. 13 Civ. 7060 (CM)(KHP), 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) ("The law favors compromise and settlement of class action suits.")[2]  The policy in favor of settlements would be well-served by approval of the Settlement of this complex securities class action, which, absent resolution, could consume years of additional resources of this Court and, likely, the Court of Appeals for the Second Circuit.

B.      **The Standards for Final Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval.  The Settlement should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms.  *See Wal-Mart Stores*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014).

Pursuant to the amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)      whether the class representatives and class counsel have adequately represented the class;

(B)      whether the proposal was negotiated at arm's length;

(C)      whether the relief provided for the class is adequate, taking into account:

     i.      the costs, risks, and delay of trial and appeal;

     ii.      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

_____

[2] All internal quotations and citations are omitted unless otherwise stated.

        iii.       the terms of any proposed award of attorneys' fees, including timing of payment; and

        iv.       any agreement required to be identified under Rule 23(e)(3); and

    (D)      whether the proposal treats class members equitably relative to each other.

In *City of Detroit v. Grinnell Corp*., the Second Circuit has also held that the following factors should be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265-66 (S.D.N.Y. 2012).

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the Rule 23(e) factors are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendments. Indeed, "[t]he Court understands the new Rule 23(e) factors to add to, rather than displace, the [Second Circuit] factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-8472, 2022 WL 2063864, at *6 (S.D.N.Y. June 8, 2022) (noting that the Court will discuss the *Grinnell* factors separately, to the extent they are not encompassed by Rule 23(e)(2)).

Accordingly, Co-Lead Plaintiffs will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the Rule 23(e)(2) factors and will also discuss the application of relevant, non-duplicative factors traditionally considered by the Second Circuit.

## C.    Co-Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, the court should consider whether the "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A).  There can be little doubt that Co-Lead Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class.  Co-Lead Plaintiffs, like all other members of the Settlement Class, either sold JA Solar Securities during the Class Period and/or cancelled or tendered their JA Solar Securities in exchange for the right to receive the consideration for the Merger that closed on July 16, 2018, when the value was allegedly artificially deflated by false and misleading statements and omissions.  Thus, the claims of the Settlement Class and Co-Lead Plaintiffs would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Co-Lead Plaintiffs and all members of the Settlement Class.  *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Co-Lead Plaintiffs were active and informed participants in the litigation and, among other things: (i) regularly communicated with Co-Lead Counsel regarding the posture and progress of the Action; (ii) reviewed pleadings and motions filed in the Action; and (iii) and consulted with Co-Lead Counsel on the settlement discussions and evaluated and approved the proposed Settlement.  *See* Ex. 6 at ¶ 4 and Ex. 7 at ¶ 4.  Co-Lead Plaintiffs are sophisticated investors that took an active role in supervising the litigation, as envisioned by the PSLRA, and

endorse the Settlement.  *See* Ex. 6 at ¶¶ 4-5 and Ex. 7 at ¶¶ 4-5.  A settlement reached "with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness."  *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-cv-01695, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

Additionally, throughout the Action, Co-Lead Plaintiffs had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases.  As set forth in detail in the Joint Declaration, during the course of the litigation, Co-Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims. *See generally* Joint Declaration at §§ I-III.  Moreover, Labaton and Pomerantz are highly qualified and experienced in securities litigation, as set forth in their firm resumes (*see* Exs. 3-C and 4- D) and were able to successfully conduct the Action against skilled opposing counsel.[3]

Accordingly, the Settlement Class has been, and remains, well represented.

### D.    The Settlement Was Reached After Robust Arm's-Length Negotiations

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016).

The Settlement here merits such a presumption of fairness because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel, under the

---

[3] Defendants were represented by a very well-regarded firm, Skadden, Arps, Slate, Meagher, & Flom LLP.

supervision of an experienced Mediator.  The Parties participated in two full-day mediation sessions, separated by over two years of hard-fought litigation.  The first one took place on January 13, 2020 and the second on September 20, 2022.  In advance of both sessions, the Parties exchanged detailed mediation statements and exhibits, which addressed the issues of both liability and damages.  ¶¶ 26-27.  The Parties and their counsel had a deep understanding of the strengths and weaknesses of the case before agreeing to settle.  The judgment of Co-Lead Counsel—law firms that are highly experienced in securities class action litigation—that the Settlement is in the best interests of the Settlement Class is also entitled to "great weight."  *City of Providence v. Aeropostale Inc. et al*., No. 11-cv-7132*,* 2014 WL 1883494, at \*5 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015).

### E.      The Relief Provided by the Settlement Is Adequate

The Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).  "This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i)."  *In re GSE Bonds Antitrust Litig*., No. 19-CV-1704 (JS), 2019 WL  6842332, at \*2 (S.D.N.Y. Dec. 16, 2019).   Indeed, "[t]his assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. at 36.

### 1.      The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement

Securities class actions like this one are, by their nature, highly complex and district courts have long recognized that "[a]s a general rule, securities class actions are notably difficult

and notoriously uncertain to litigate." *In re Facebook,* 2015 WL 6971424, at *3; *Bear Stearns,* 909 F. Supp. 2d at 266; *In re Gilat Satellite Networks*, *Ltd*., No. 02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). "Accordingly, class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Signet Jewelers Ltd. Sec. Litig*., No. 16-cv-6728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020).

This case was no exception. Even if Co-Lead Plaintiffs prevailed on their motion for leave to file the proposed SAC, Defendants' future motion to dismiss if Plaintiffs were granted leave, and Defendants' pending appeal of the Court's Order granting Plaintiffs' relief from judgment—which posed substantial risks—there still remains completion of discovery, class certification, summary judgment and then trial. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense, and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

Further, a trial of the claims here would have required extensive expert testimony on issues related to, among others, the fair value of JA Solar at the time of the Merger, the efficiency of the market in advance of the Merger, and damages under the Exchange Act. Courts

routinely observe that these sorts of disputes—requiring dueling testimony from experts—are particularly difficult for plaintiffs to litigate. *See, e.g.*, *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited…").

Of course, even if Co-Lead Plaintiffs had prevailed at summary judgment and then trial, it is virtually certain that appeals would be taken, which would have, at best, delayed any recovery. At worst, there was of course the possibility that a verdict in favor of Co-Lead Plaintiffs and the class could be reversed by the trial court or on appeal. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

## 2. The Risks of Establishing Liability and Damages Support Approval of the Settlement

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463. In most cases, this will be the most important factor for a court to consider in its analysis of a proposed settlement. *See Id.* at 455 ("The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement."). While Co-Lead Plaintiffs and Co-Lead Counsel believe the claims asserted against Defendants are strong, they recognize that the Action presented several substantial and unique obstacles. The most immediate risks faced by the Settlement Class are related to Co-Lead Plaintiffs' pending motion for leave to file the proposed SAC, Defendants' future motion to dismiss if Plaintiffs are allowed to file the SAC, and Defendants' pending appeal of the Court's Order granting Plaintiffs relief from judgment.

### (a)      Risks Related to Proving Liability

Prior to the discovery of newly discovered evidence, the Court had granted Defendants'

Motion to Dismiss.  The Court found that Plaintiffs had not adequately pled falsity as to the

relisting statements because Plaintiffs did not "plausibly allege that there was an actual, concrete

plan to relist" at the time of the alleged misstatements.  ECF No. 80 at 20.  Further, the Court

found that Plaintiffs had not adequately pled reliance on behalf of the Tenderer Shareholders and

failed to adequately plead loss causation on behalf of the Seller Shareholders because Plaintiffs

did not establish that "the misleading statements regarding JA Solar's financial position kept the

price of the Seller Shareholders' Securities artificially low at the time they sold their shares."  *Id*.

at 29. Even if the Court were to grant Plaintiffs leave to file the SAC, they would confront the

risk that the Court would continue to make these same rulings on Defendants' subsequent motion

to dismiss the SAC. ¶¶ 32-35.

Additionally, Defendants contended in their initial Motion to Dismiss that the alleged

false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to

support the securities fraud claims, because the Complaint contained only "generalized" and

"speculative" allegations that did not sufficiently support scienter. While Co-Lead Counsel

believe that the Complaint and proposed SAC adequately allege scienter, Co-Lead Counsel were

well aware of the high hurdle they would have to meet in order to plead and prove that the

Defendants acted with the intent to "deceive, manipulate, or defraud" investors under the federal

securities laws.  Indeed, "[p]roving a defendant's state of mind is hard in any circumstances."

*Telik,* 576 F. Supp. 2d at 579.  There is no doubt that Defendants would continue to advance

numerous scienter arguments that posed very significant hurdles to proving that they acted with

an intent to commit securities fraud or with severe recklessness.  ¶ 33.

### (b)      Risks Related to Proving Loss Causation and Damages

Another principal challenge in continuing the Action was the difficulty of proving loss causation and damages.   These issues would have been hotly contested by Defendants, particularly in the context of class certification and summary judgment, and would continue to be challenged in *Daubert* motions, at trial, in post-trial proceedings and appeals.

This case raises complicated and unique issues with respect to the central theory of loss causation, namely that investors were induced to sell JA Solar Securities for less than fair value based upon Defendants' alleged misrepresentations—in contrast to the more standard securities fraud claim that investors *bought* a company's stock at *inflated* prices.   These facets of the case led Defendants to argue that Plaintiffs had failed to allege any losses that resulted from Defendants' actions.   *See* ECF Nos 55 and 68.   Indeed, the Court has already dismissed the case on similar grounds.   *See* ECF No. 80.   While Plaintiffs are confident they would ultimately prevail—either in connection with their proposed SAC (ECF No. 109-1) or on appeal before the Second Circuit (Case No. 20-04268)—on their theory of loss causation, which must be assessed in the context of going-private transactions, the fact that the Court initially rejected their claims based on this element and could do so again shows how favorable the $21 million recovery is for the Settlement Class.   ¶¶ 36-37.

As detailed in the Joint Declaration, if Plaintiffs had fully prevailed on each of their claims at summary judgment and after a jury trial, assuming the Court certified the same class period as the Class Period in the Settlement, and if the Court and jury accepted Plaintiffs' damages theory, total potential maximum damages for JA Solar shareholders that tendered their ADS or shares in the Merger were estimated by Co-Lead Plaintiffs to be approximately $408

million.[4]  Under this scenario, the $15.75 million of the $21 million Settlement that is allocated

to these shareholders represents a recovery of approximately 3.86%.[5]  ¶ 50.

This recovery percentage is favorable because the specific amount of damages at issue

would be highly contested, and to a greater degree than in a typical stock-drop case. Here, unlike

in a typical securities class action, damages would be based on expert valuations of JA Solar's

fair value at the time of the Merger. This "task of enterprise valuation, even for a finance expert,

is fraught with uncertainty." *Towerview LLC v. Cox Radio, Inc.*, CA No. 4809-VCP, 2013 WL

3316186, at *23 n. 171 (Del. Ch. June 28, 2013); *see also Hicks v. Morgan Stanley*, No. 01-

10071, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (noting that "'battle of the experts' as

to proper methods of valuation . . . creates a significant obstacle to plaintiffs in establishing

liability"). The battle of the experts here would be much more uncertain than in a typical stock-

drop case, where damages are based only on the amount that a company's stock price fell in

connection with the revelation of the fraud, rather than also on the value of the company.

Moreover, in a stock-drop case, maximum damages are typically capped at the value that the

stock price fell. In a defrauded seller case, in contrast, maximum damages can be vast because a

---

[4] Plaintiffs' fair value assessment is based on the difference between JA Solar's valuation in the Merger of approximately $360 million and the value attributed to it shortly after the Merger, in press accounts of JA Solar's relisting plan, of $1.1 billion. (ECF No. 109-1, SAC ¶ 158). Per share damages of $15.70 per ADS are based on the difference between (1) a fair value of $23.25 per ADS and (2) the Merger price of $7.55 per ADS. There were 26 million ADS that were tendered in the Merger and are potentially eligible to recover in the Settlement, which yields total overall damages of approximately $408 million.

[5] The Settlement also allocates 20% to Settlement Class Members that sold shares during the Class Period, before the Merger closed. (*See* Ex. 1-A at 10). These shareholders, which include Co-Lead Plaintiffs, are receiving a smaller portion of the Settlement and of their estimated damages because, among other reasons, the potential evidence of the relisting plan at issue here is stronger later in the Class Period (*see, e.g.*, ECF No. 104 at 3), the tendering shareholders have more ways to establish the element of reliance (*see* ¶ 44), and it would be more difficult for the sellers to establish their full measure of damages.

company can be undervalued by many multiples of its stock price. For example, Plaintiffs allege JA Solar was undervalued by approximately 200%. Obtaining damages approaching the full measure on this basis is significantly more difficult than when damages are measured from a lower baseline. ¶ 38.

While Co-Lead Counsel would work extensively with Co-Lead Plaintiffs' damages experts with a view towards presenting compelling arguments to the jury and prevailing at trial, Defendants would have put forth well-qualified experts of their own who were likely to opine that the class suffered little or no damages. As courts have long recognized, the substantial uncertainty as to which side's experts might be credited by a jury presents a serious litigation risk. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *Telik,* 576 F. Supp. 2d at 579-80 (in this "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found…").

Given all of these risks with respect to liability, loss causation, and damages, Co-Lead Plaintiffs and Co-Lead Counsel respectfully submit that it is in the best interests of the Settlement Class to accept the certain and substantial benefit conferred by the Settlement.

### (c)    The Risks of Achieving and Maintaining Class Certification

As discussed in the Joint Declaration (§III(C)), Co-Lead Plaintiffs had not yet filed a motion for class certification when the Parties agreed to settle. In ongoing litigation, Plaintiffs would have had to meet their burdens with respect to class certification by showing that JA Solar Securities traded on an efficient market, entitling class members to the presumption of reliance on Defendants' materially false statements. Under *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258 (2014), Defendants would have been permitted to rebut the presumption by

proving that there was no price impact.  Moreover, the law governing certification of securities class actions has been in constant flux, as evidenced by *Halliburton* and the Supreme Court's recent decision in *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021).

For example, Defendants' Motion to Dismiss argued that, with regard to shareholders who sold JA Solar Securities, Plaintiffs offer no factual basis for their assertion that statements about the relisting plans or the fairness of the proposed transaction price depressed JA Solar's ADS price.  Among other things, Defendants pointed to purported increases of JA Solar's ADS price on the dates it announced the go-private transaction, issued the Preliminary Proxy Materials, and issued the Final Proxy Materials.  While Plaintiffs believe that they have rebutted Defendants' assertions by demonstrating that Plaintiffs suffered losses because they parted with shares that were worth more than the Merger price, as demonstrated by the substantial increase in the Company's value following the Merger, there is no guarantee that the Court would have found that Defendants failed to show a lack of price impact, and certified the class.  ¶ 43.

For the Tendering Shareholders, Plaintiffs would have had to convince the Court, or the Second Circuit, that reliance was satisfied based on one of several independent bases that Plaintiffs have set out.  While the Court initially dismissed the Tenderer claims, Plaintiffs would have proffered additional avenues to satisfy the reliance element for these claims because, in addition to being entitled to the presumptions of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), reliance for the Tenderers is satisfied under *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970).  The Second Circuit was particularly interested in these arguments during oral argument on Plaintiffs' motion to remand, however it is far from clear how the Second Circuit would have handled a class certification challenge. (ECF No. 98-1); ¶ 44.

The Settlement avoids any uncertainty with respect to class certification and the risks of

maintaining certification through trial and on appeal.  *See Ebbert v. Nassau Cnty.*, No. 05-5445, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of de-certification of the certified class supported approval of Settlement).[6]

**F.     The Effective Process for Distributing Relief to the Settlement Class**

Rule 23(e)(2)(C) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  The proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, KCC Class Action Services, LLC ("KCC").  The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action.  Namely, class members can submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to recover by, among other things, calculating their respective Recognized Loss based on the Court-approved Plan of Allocation, as revised, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund within each Sub-Fund.  *See* Stipulation at ¶ 24; ¶ 71.  Co-Lead Plaintiffs' claims will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and will be given the chance to contest the rejection of their claims.  *Id*. at ¶ 30(d)-(e).  Any claim disputes that

---

[6] In the Preliminary Approval Order (ECF No. 122), the Court preliminarily certified the Settlement Class. There have been no developments in the case that would undermine that determination and, for all the reasons stated in Co-Lead Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 119), Co-Lead Plaintiffs now request that the Court reiterate its prior certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes only, and the appointment of Co-Lead Plaintiffs as Class Representatives and Labaton and Pomerantz as Class Counsel.

cannot be resolved will be presented to the Court.  *Id*. ¶ 30(e)

After the Settlement reaches its Effective Date (*id*. at ¶ 39) and the claims process is completed, Authorized Claimants will be issued payments.  If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses).  Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  Thereafter, Co-Lead Plaintiffs recommend that any *de minimis* balance that still remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses, Taxes and, attorneys' fees and expenses, if any, be contributed to Consumer Federation of America, or such other private, a non-profit, non-sectarian 501(c)(3) organization designated by Co-Lead Plaintiffs and approved by the Court. *Id*. at ¶ 27.

### G.      The Requested Attorneys' Fees and Expenses Are Reasonable

As discussed in the accompanying Fee Memorandum, the requested attorneys' fees of 20% of the Settlement Fund, payable as ordered by the Court, are reasonable in light of the efforts of Co-Lead Counsel and the risks in the litigation.  Most importantly with respect to the Court's consideration of the fairness of the Settlement, is the fact that approval of attorneys' fees is entirely separate from approval of the Settlement, and neither Co-Lead Plaintiffs nor Co-Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

### H.      The Relief Provided in the Settlement Is Adequate Taking Into Account All Agreements Between the Parties Related to the Settlement

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in

connection with the proposed Settlement. On December 1, 2022, the Parties executed a Confidential Settlement Term Sheet ("Term Sheet") and on January 23, 2023, they entered into the Stipulation and a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement").  *See* Stipulation at ¶ 41.  The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold.  As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class. The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

### I.     Application of the Remaining *Grinnell* Factors Support Approval

#### 1.     The Ability of Defendants to Withstand a Greater Judgment

While it is Co-Lead Plaintiffs' understanding that Defendants could withstand a judgment in excess of $21 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment when the other factors favor the settlement.  *See, e.g., Veeco*, 2007 WL 4115809, at *11 ("this factor alone does not prevent the Court from approving the Settlement where the other *Grinnell* factors are satisfied").

#### 2.     The Reaction of the Settlement Class to Date

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy.  *See, e.g., Bear Stearns*, 909 F. Supp. 2d at 266-67. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, KCC, has mailed copies of the Notice Packet (consisting of the Notice and Claim Form) to potential Settlement Class Members and their nominees.  *See* Declaration of Lance Cavallo Regarding (A)

Mailing of Notice and Claim Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date, dated June 7, 2023 ("Initial Mailing Decl."), Exhibit 1 at ¶¶ 2-8.  As of June 6, 2023, KCC has mailed 23,087 copies of the Notice Packet.  *Id*. at ¶ 8. On May 2, 2023 the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire*.  *Id*. at ¶ 9.

While the deadline set by the Court for Settlement Class Members to object (June 22, 2023) has not yet passed, to date, there have been no objections to the Settlement or Plan of Allocation and no requests for exclusion from the Settlement Class.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2009 WL 2025160, at *2 (S.D.N.Y. July 10, 2009) (no class member objections since preliminary approval supported final approval).  As provided in the Preliminary Approval Order, Co-Lead Plaintiffs will file reply papers no later than July 6, 2023, addressing any objections and any additional requests for exclusion.

### 3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement

"[A] sufficient factual investigation must have been conducted to afford the Court the opportunity to 'intelligently make… an appraisal of the settlement.'"  *Puddu v. 6D Global Tech., Inc*., No. 15-8061, 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021).  *See also In re Frontier Commc'ns Corp. S'holders Litig.,* No. 17-cv-01617, 2022 WL 4080324, at *12 (S.D.N.Y. May 20, 2022) ("it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make ... an appraisal of the Settlement").

Here, as detailed in the Joint Declaration, prior to agreeing to settle, Co-Lead Counsel conducted a comprehensive investigation; prepared a comprehensive amended Complaint; opposed Defendants' motion to dismiss the Complaint; briefed an appeal of the Court's dismissal of the Complaint; moved for an indicative ruling upon uncovering newly discovered evidence;

19

briefed and argued, before the Second Circuit, a motion to remand the appeal to the Court to allow it to consider the newly discovered evidence; moved for relief from judgment based upon the discovery of new evidence; briefed whether the Second Circuit had jurisdiction to hear Defendants' appeal of the decision granting relief from judgment; drafted and filed a motion for leave to file a second consolidated amended complaint, including a proposed second amended complaint; and prepared for and participated in a rigorous mediation process, involving two separate formal mediation sessions.  *See* Joint Decl. at §§I-II.

Armed with this substantial base of knowledge, Co-Lead Plaintiffs were in a position to balance the proposed Settlement with a well-educated assessment of the likelihood of overcoming the risks of litigation.   Accordingly, Co-Lead Plaintiffs and Co-Lead Counsel respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial.  *Tchrs. Ret. Sys. of La. v. A.C.L.N. Ltd.*, No. 01-cv-011814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004).  The Court thus should find that this factor also supports approval.

### 4. The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement

Courts agree that the determination of a "reasonable" settlement "is not susceptible [to] a mathematical equation yielding a particularized sum."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Instead, "in any case there is a range of reasonableness with respect to a settlement…."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  Here, as discussed above and in the Joint Declaration (¶ 50), if the Court and jury accepted Plaintiffs' damages theories, total potential maximum damages for JA Solar shareholders that tendered their ADS or shares in the Merger were estimated by Co-Lead Plaintiffs to be approximately $408 million, meaning the Settlement represents a recovery of

approximately 3.86%. This is within the range that courts commonly approve. *See, e.g.*, *Hicks*, 2005 WL 2757792, at *7 (approving $10 million settlement representing 3.8% of estimated damages); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("[T]here is no reason . . . why satisfactory settlement could not amount to a hundredth or even a thousandth" of a "single percent of the potential recovery."); *see also Vataj v.* Johnson, No. 19-cv-06996, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (finding 2% of damages was "consistent with the typical recovery in securities class action settlements"); *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09–cv–00419, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering 3.5% of damages and noting amount is within the median recovery in securities class actions settled).

Additionally, the Settlement is greater than the median value of securities class action settlements in actions asserting claims under Section 10(b) of the Exchange Act. For the period from 2017 through 2021, the median settlement in securities class actions was $10.2 million and $13 million in 2022. ¶ 51; Ex. 2 at 1, 6. Moreover, the percentage of recovery here is particularly favorable given the extent to which the amount of damages at issue would be contested if the litigation were to proceed. (*See supra* §I(E)(2)(b)).

## II.     THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation with a "rational basis" satisfies this requirement. *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *21 (S.D.N.Y. Nov. 8, 2010); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 497. A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable.

*See IMAX*, 283 F.R.D. at 192.  However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision."  *In re PaineWebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Here, the proposed Plan, which was developed by Co-Lead Counsel in consultation with Co-Lead Plaintiffs' expert, provides a fair and reasonable method to allocate the Net Settlement Fund among class members who submit valid claims.  The Plan is set forth in full in the Notice and Class Members were advised that the proposed Plan was subject to modification, without additional individual notice being provided.  *See* Ex. 1-A at 9-11.  The Plan provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis within each Sub-Fund, based on their "Recognized Loss Amounts," calculated according to the Plan's formulas.  The Plan of Allocation measures the estimated fair value of JA Solar Securities during the Class Period based on the difference between JA Solar's valuation in the Merger of approximately $360 million and the value attributed to it in press accounts of JA Solar's relisting plan shortly after the Merger, of $1.1 billion.  ¶ 66.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each sale or closure (in the case of swaps) of JA Solar Securities during the Class Period (*i.e.*, from November 20, 2017 through and including July 16, 2018), and/or sale, tender or cancellation of JA Solar Securities in exchange for the right to receive the Merger consideration, that are listed in the Claim Form and for which adequate documentation is provided.  In general, the Recognized Loss Amount calculated will be the difference between Co-Lead Plaintiffs' estimate of the fair value of the JA Solar Security during the Class Period and the price at which the Security was sold, tendered/cancelled, or closed.  ¶ 67.

The Plan of Allocation calls for the Net Settlement fund to be allocated into four Sub-

Funds based on when the JA Solar Security was transacted during the Class Period, whether the security was sold or cancelled/tendered in the Merger, and the type of security for which a claim is filed. Settlement proceeds available for JA Solar ADSs and ordinary shares that were held as of the opening of the U.S. financial markets on December 11, 2017 and sold during the Class Period may recover up to a maximum of 10% of the Net Settlement Fund. Settlement proceeds available for all other JA Solar ADSs and ordinary shares sold during the Class Period may recover up to a maximum of 10% of the Net Settlement Fund. Settlement proceeds available for JA Solar ADSs and ordinary shares that were cancelled or tendered in exchange for Merger consideration may recover up to a maximum of 75% of the Net Settlement Fund. ¶ 68.

The Plan also provided that Settlement proceeds available for claims based on long position cash-settled equity swaps referencing JA Solar ADSs may recover up to a maximum of 5% of the Net Settlement Fund.  ¶ 69.  However, following entry of the Preliminary Approval Order, it was determined that an additional provision should be added to the Plan of Allocation to ensure that the Plan would not provide an inadvertent potential benefit to the Lead Plaintiffs. This modification is intended to benefit non-Lead Plaintiff Class Members.  The new provision would state that: (a) if the only claims including swaps are those submitted by a Lead Plaintiff and (b) if the new provision would not negatively affect the recovery of any non-Lead Plaintiff Class Member, then swap transactions shall be treated as transactions in JA Solar ADS and recover within the respective Sub-Fund based on the timing of those trades.  If the new provision is approved and applied, then the portion of the Net Settlement Fund that would have been allocated only to swap transactions (*i.e.,* the maximum 5% allocation) will be distributed proportionally to the other Sub-Funds and swaps will be treated as ADSs, increasing the amounts allocated to non-Lead Plaintiff Class Members. The new provision will go into effect only if both

of its conditions are satisfied, and thus cannot negatively affect the recovery of any non-Lead Plaintiff Class Member.  ¶ 69.

KCC, as the Court-approved Claims Administrator, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Loss compared to the aggregate Recognized Losses of all Authorized Claimants, as calculated according to the Plan of Allocation.

Co-Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund.  *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel").  Moreover, as noted above, to date, no objections to the proposed Plan have been received.

## III.    NOTICE SATISFIED RULE 23 AND DUE PROCESS

Co-Lead Plaintiffs have provided the Settlement Class with notice of the proposed Settlement that satisfied all the requirements of Rule 23(e) and due process, which require that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart Stores*, 396 F.3d at 114—and be the best notice practicable under the circumstances.  Both the substance of the notice program and the method of dissemination satisfied these standards.

The Notice provided all of the information necessary for Settlement Class Members to make an informed decision regarding the Settlement, the Fee and Expense Application, and the Plan of Allocation.  The Notice advised Settlement Class Members of, among other things: (i) the amount of the Settlement; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected share; (iv) the maximum amount of attorneys' fees

and expenses that will be sought; (v) the right of Settlement Class Members to object to the Settlement or seek exclusion; and (vi) the binding effect of a judgment on Settlement Class Members.  *See* 15 U.S.C. § 78u-4(a)(7).  The Notice also contained the Plan of Allocation and provided information about how to submit a Claim Form.[7]

In addition, KCC caused the Summary Notice to be published in *The Wall Street Journal* and to be released over the internet using *PR Newswire.*  Ex. 1 at ¶ 9.  KCC also created a website for the Settlement, www.JASolarSecuritiesSettlement.com, to provide information about the Settlement, as well as access to copies of the Notice, the Claim Form, Stipulation, and the Preliminary Approval Order (*id*. at ¶¶ 11-12).

This combination of individual mail to those who could be identified with reasonable effort, supplemented by publication and internet notice, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-8144, 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## <u>CONCLUSION</u>

For all the foregoing reasons, Co-Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, approve the proposed Plan of Allocation, as modified, and finally certify the Settlement Class for purposes of the Settlement only.  Proposed orders will be submitted with the reply papers, after the deadlines for objecting or seeking exclusion have passed.

---

[7]     The revision to the Plan of Allocation described herein at Pages 21-24 cannot, by design, negatively affect the recovery of any non-Lead Plaintiff Class Member and, therefore, it does not require additional notice to the Settlement Class. Moreover, Class Members were advised that the proposed Plan could be modified and that additional individual notice would not be provided. *See* Ex. 1-A at p. 9.

Dated:  June 8, 2023                          Respectfully submitted,

                                              **POMERANTZ LLP**

                                              /s/ Michael Grunfeld
                                              Jeremy A. Lieberman
                                              Michael Grunfeld
                                              600 Third Avenue, 20th Floor
                                              New York, New York 10016
                                              Telephone: (212) 661-1100
                                              Facsimile: (212) 661-8665
                                              jalieberman@pomlaw.com
                                              mgrunfeld@pomlaw.com

                                              ***Counsel for Co-Lead Plaintiff***
                                              ***Altimeo Asset Management***
                                              ***and Co-Lead Counsel for the Class***

                                              **LABATON SUCHAROW LLP**

                                              /s/ Carol C. Villegas
                                              Carol C. Villegas
                                              David J. Schwartz
                                              Jake Bissell-Linsk
                                              140 Broadway
                                              New York, New York 10005
                                              Telephone: (212) 907-0700
                                              Facsimile: (212) 818-0477
                                              Email: cvillegas@labaton.com
                                                     dschwartz@labaton.com
                                                     jbissell-linsk@labaton.com

                                              ***Counsel for Co-Lead Plaintiff***
                                              ***ODS Capital LLC, and***
                                              ***Co-Lead Counsel for the Class***

                                              **THE LAW OFFICE OF**
                                              **JO ANN PALCHAK, P.A.**
                                              Jo Ann Palchak
                                              1725 1/2 7th Ave.,
                                              Suite 6 Tampa, FL 33605
                                              Telephone: (813) 468-4884
                                              Email: jpalchak@palchaklaw.com

                                              ***Counsel for Co-Lead Plaintiff***
                                              ***ODS Capital LLC***

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.


/s/ *Michael Grunfeld*