UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODS CAPITAL LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>     vs.<br><br>JA SOLAR HOLDINGS CO., LTD., BAOFANG JIN, and SHAOHUA JIA,<br><br>           Defendants. | Case No.  1:18-cv-12083-ALC<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES
<u>AND PAYMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................3

I.    THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE
PERCENTAGE OR LODESTAR METHOD ...................................................3

    A.    The Requested Attorneys' Fee Would Be Reasonable Under the
Percentage-of-the-Fund Method ....................................................4

    B.    Fees Awarded in Comparable Cases Within this District.......................5

    C.    The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar
Method .................................................................................7

II.    THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING
THE SECOND CIRCUIT'S FACTORS .........................................................9

    A.    Co-Lead Counsel Have Devoted Significant Time and Labor to the Action ........10

    B.    The Magnitude and Complexity of the Action Support the Requested Fee ..........11

    C.    The Risks of the Litigation Support the Requested Fee .........................12

    D.    The Quality of Co-Lead Counsel's Representation ...............................13

    E.    The Requested Fee in Relation to the Settlement .................................14

    F.    Public Policy Considerations Support the Requested Fee .......................14

III.    THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE
REQUESTED FEE ...................................................................................15

IV.    CO-LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................15

V.    CO-LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REQUESTED
REIMBURSEMENT UNDER 15 U.S.C. §78u-4(a)(4) ...................................17

CONCLUSION........................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ................................................................................................3

*Christine Asia Co., Ltd., et al., v. Jack Yun Ma, et al*.,
    No. 15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................9

*City of Providence v. Aeropostale Inc.*,
    No. 11-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) *aff'd, Arbuthnot v.
    Pierson*, 607 F. App'x. 73 (2d Cir. 2015) ................................................4, 5, 11, 12

*Goldberger v. Integrated Res, Inc.*,
    209 F.3d 43 (2d Cir. 2000) ...............................................................................4, 9

*Hicks v. Morgan Stanley, et al.*,
    No 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .........................3, 14

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
    MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272
    F. App'x. 9 (2d Cir. 2008) ...................................................................................14

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................12

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig*.,
    772 F.3d 125 (2d Cir. 2014) .................................................................................19

*In re Bayer AG Sec. Litig.*,
    No. 03-1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ..................................12

*In re Beacon Associated Litig*.,
    2013 WL 2450960 (S.D.N.Y. May 9, 2013) ...........................................................5

*In re Bisys Sec. Litig.*,
    2007 WL 2049726 (S.D.N.Y July 16, 2007) ...........................................................8

*In re BRF S.A. Sec. Litig*.,
    No. 1:18-CV-02213-PKC, 2020 WL 10618214 (S.D.N.Y. Oct. 23, 2020) .............6

*In re Bristol-Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.N.Y. 2005) .....................................................................7

*In re Celestica Inc. Sec. Litig*.,
    No. 07-cv-00312-GBD, slip op. (S.D.N.Y. July 28, 2015) (Ex. 8) .........................6

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
2022 U.S. Dist. LEXIS 144451 ...........................................................................6

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
No. 17-1580-LGS, 2022 U.S. Dist. LEXIS 14451 (S.D.N.Y. Aug. 5, 2022) ...........................5

*In re China Sunergy Sec. Litig.*,
No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...........................................16

*In re Cnova N.V. Sec. Litig.*,
Master File No. 1:16-cv-00444-LTS-OTW, slip op. (S.D.N.Y. Mar. 20, 2018)
(Ex. 8) ...........................................................................................................5

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)...........................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...................................8, 12, 14

*In re Deutsche Bank AG Sec. Litig.*,
No. 1:09-cv-01714-GHW-RWL, 2020 WL 3162980 (S.D.N.Y. June 11, 2020) ....................5

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005)...........................................................................9

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018)...........................................................6

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...................................8, 13, 14

*In re Frontier Commc'ns Corp. S'holders Litig.*,
No. 17-cv-01617, 2022 WL 4080324 (D. Conn. May 20, 2022) ...........................................4

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................13

*In re Perrigo Co. PLC Sec. Litig.*,
No. 19-CV-70 (DLC), slip op. (S.D.N.Y. Feb. 18, 2022) (Ex. 8) ...........................................5

*In re Petrobras Sec. Litig.*,
317 F. Supp. 3d 858 (S.D.N.Y. 2018)...........................................................................19

*In re Prothena Sec. Litig.*,
No. 18-cv-06425, 2019 U.S. Dist. LEXIS 212085 (S.D.N.Y. Dec. 4, 2019)
(Carter, J.) ...........................................................................................................5

*In re Salomon Analyst Metromedia Litig.*,
   No 02-7966, slip op. (S.D.N.Y. Feb. 27, 2009) (Ex. 8) ............................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16 cv 06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................11, 12, 18, 19

*In re Silvercorp Metals Inc. Sec. Litig.*,
   No. 12-cv-09456-JSR, slip op. (S.D.N.Y. Feb. 13, 2015) (Ex. 8) ............................19

*In re Sundial Growers Inc. Sec. Litig.*,
   No. 19-cv-08913-ALC, slip op. (S.D.N.Y. Oct. 6, 2022) (Carter, J.) (Ex. 8) .........................5

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................................5, 7

*In re Veeco Instruments Inc. Sec. Litig.*,
   MDL No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)...............................13, 14, 15

*Khait v. Whirlpool Corp.*,
   No. 06-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) (Carter, J.)...................................6

*Landmen Partners, Inc. v. Blackstone Grp. L.P.*,
   No. 08-cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013) (Ex. 8) ....................................6

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997).......................................................................................7

*Lyons v. Litton Loan Servicing LP*,
   No. 1:13-cv-00513-ALC-HBP, slip op. (S.D.N.Y Aug. 15, 2016.) (Carter, J.) ......................6

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................................................................14

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)......................................................................................3

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)...................................................................................................7

*Pearlstein v. Blackberry Ltd.*,
   No. 13 Civ. 7060 (CM), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ..................................6

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999)......................................................................................4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007).................................................................................................3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................................4, 7, 8

**Statutes**

15 U.S.C. § 78j(b) ...........................................................................................................10

15 U.S.C. § 78t(a) ...........................................................................................................10

15 U.S.C. §78u-4(a)(4) .................................................................................................1, 17

Private Securities Litigation Reform Act of 1995 ............................................................1, 17, 20

**Other Authorities**

17 C.F.R. § 240.10b-5 .......................................................................................................10

Court-appointed Co-Lead Counsel, Labaton Sucharow LLP ("Labaton") and Pomerantz LLP ("Pomerantz"), on behalf of all Plaintiffs' Counsel, respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees in the amount of 20% of the Settlement Fund.  Co-Lead Counsel also seek payment of $178,970.61 in Litigation Expenses that they reasonably incurred in prosecuting the Action, as well as reimbursement to Co-Lead Plaintiffs Altimeo Asset Management ("Altimeo") and ODS Capital LLC ("ODS," and collectively with Altimeo, "Co-Lead Plaintiffs") in the amounts of $60,000 and $60,000, respectively, directly related to their representation of the Settlement Class throughout this four-year litigation, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this Action in its entirety in exchange for a $21 million cash payment pursuant to the terms of the Stipulation.  The Settlement brings to a close, with a very favorable result, four years of litigation, including vigorous and complex motion and appellate practice and robust arm's-length negotiations between highly experienced counsel. Defendants had substantial defenses to liability. Co-Lead

---

[1] Co-Lead Counsel are simultaneously submitting herewith the Joint Declaration of Michael Grunfeld and Jake Bissell-Linsk in Support of: (I) Co-Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Payment of Litigation Expenses, and Awards to Co-Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Joint Declaration") (cited as "¶").  Capitalized terms have the meanings ascribed to them in the Joint Declaration or the Stipulation and Agreement of Settlement, dated January 23, 2023 (ECF No. 120-1) (the "Stipulation"). Plaintiffs' Counsel are Pomerantz, Labaton, and the Law Office of Jo Ann Palchak, P.A.

All exhibits referenced below are attached to the Joint Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

Plaintiffs' motion for leave to file a second amended complaint was pending when the Parties agreed to settle and so a future motion to dismiss still remained. Even if Plaintiffs succeeded in prevailing on Defendants' likely motion to dismiss the proposed second amended complaint ("SAC"), summary judgment and class certification remained, and establishing both Defendants' liability and loss causation at trial posed significant challenges.

In the face of these hurdles—as well as the fully contingent nature of the case—Co-Lead Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel. Among the other work detailed in the Joint Declaration, Co-Lead Counsel: (i) conducted a robust international investigation and filed a detailed 108-page amended complaint, which involved identifying and interviewing former employees that were familiar with the Company and others with potentially relevant knowledge; (ii) researched and drafted an opposition to Defendants' motion to dismiss the Complaint; (iii) briefed an appeal of the Court's dismissal of the Action; (iv) successfully moved for an indicative ruling upon uncovering newly discovered evidence; (v) successfully briefed and argued, before the Second Circuit, a motion to remand the appeal to the Court to allow it to considered the newly discovered evidence; (vi) successfully moved for relief from judgment based upon the newly discovered evidence; (vii) briefed whether the Second Circuit has jurisdiction to hear Defendants' appeal of the decision granting relief from judgment; and (viii) drafted and filed a motion for leave to file a second consolidated amended complaint based on the newly discovered evidence, including a proposed second amended complaint. The Parties also engaged in extensive mediation efforts overseen by Robert A. Meyer of JAMS, which included the preparation of mediation briefs, two full-day mediation sessions, and subsequent negotiations of the Stipulation. *See generally* Joint Decl. at §§ I and II.

Against this backdrop, Co-Lead Counsel request a fee of 20% of the Settlement Fund, which would represent a reasonable lodestar "multiplier" of approximately 1.6, payment of Litigation Expenses in the amount of $178,970.61, and reimbursement of $60,000 to ODS and $60,000 to Altimeo for the time and resources they dedicated to diligently representing the class. As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class action settlements of this size in the Second Circuit, and the fee and expense requests are well supported by both case law and the facts of this case.

For the following reasons, Co-Lead Counsel respectfully submit that their efforts and the results achieved in the Action justify the requested fees and expenses.

## ARGUMENT

## I.   THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"). Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, *et al.*, No 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in

common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, the requested fee award—20% of the Settlement Fund—is well supported under either the "percentage" or "lodestar" method.

### A.     The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method

Co-Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained.  Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale Inc.*, No. 11-7132, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014) *aff'd*, *Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also In re Frontier Commc'ns  Corp. S'holders Litig.,* No. 17-cv-01617, 2022 WL 4080324, at *14 (D. Conn. May 20, 2022) ("The general trend in this Circuit favors using the percentage method in common fund cases."); *Goldberger,* 209 F.3d at 48-50 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund

cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").[2]

### B.    Fees Awarded in Comparable Cases Within this District

The 20% fee requested by Co-Lead Counsel is well within, and at the lower range of, percentage fees awarded within the Second Circuit in securities class actions of a similar size, including by the Court.  "In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund." *In re Beacon Associated Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *see, e.g., In re Perrigo Co. PLC Sec. Litig.*, No. 19-CV-70 (DLC), slip op. at 2 (S.D.N.Y. Feb. 18, 2022) (awarding 33 1/3% of $31.9 million settlement) (Ex. 8)[3]; *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, No. 17-1580-LGS, 2022 U.S. Dist. LEXIS 14451, at *4-5 (S.D.N.Y. Aug. 5, 2022) (awarding 33 1/3% of $44 million settlement); *In re Cnova N.V. Sec. Litig.*, Master File No. 1:16-cv-00444-LTS-OTW, slip op. at 5 (S.D.N.Y. Mar. 20, 2018) (awarding 33.3% of $28.5 million settlement) (Ex. 8); *In re Deutsche Bank AG Sec. Litig.,* No. 1:09-cv-01714-GHW-RWL, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding 33 1/3% of $18.5 million settlement); *City of Providence*, 2014 WL 1883494, at *20 (awarding 33% of $15 million settlement); *In re Prothena Sec. Litig.*, No. 18-cv-06425, 2019 U.S. Dist. LEXIS 212085, at *3 (S.D.N.Y. Dec. 4, 2019) (awarding 30% of $15,750,000 settlement) (Carter, J.); *In re Sundial Growers Inc. Sec. Litig.,* No. 19-cv-08913-ALC, slip op. at 2 (S.D.N.Y. Oct. 6, 2022) (awarding 33 1/3% of $7 million settlement) (Carter, J.) (Ex. 8).

---

[2] All internal quotations and citations are omitted unless otherwise stated.

Awards of 20% or more are also regularly awarded in cases with larger settlements in courts within the Second Circuit. *See, e.g., Pearlstein v. Blackberry Ltd.,* No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858, at *10-11 (S.D.N.Y. Sept. 29, 2022) (awarding 33 1/3% of $165 million settlement); *Landmen Partners, Inc. v. Blackstone Grp. L.P.*, No. 08-cv-03601-HB-FM, slip op. at 5 (S.D.N.Y. Dec. 18, 2013) (awarding 33.3% of $85 million settlement) (Ex. 8); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2022 U.S. Dist. LEXIS 144451, at *4 (awarding 33 1-3% of $44 million settlement); *In re BRF S.A. Sec. Litig.*, No. 1:18-CV-02213-PKC, 2020 WL 10618214, at *1 (S.D.N.Y. Oct. 23, 2020) (awarding 25% of $40 million settlement); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018) (awarding 25% of $35 million settlement); *In re Salomon Analyst Metromedia Litig.*, No 02-7966, slip op. at 1 (S.D.N.Y. Feb. 27, 2009) (27% fee of $35 million settlement) (Ex. 8); *In re Celestica Inc. Sec. Litig.*, No. 07-cv-00312-GBD, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% fee of $30 million settlement) (Ex. 8).

The requested 20% fee is also well within the range of percentage fees awarded in other non-securities class action cases within the Second Circuit, including by this Court. *See, e.g.*, *Khait v. Whirlpool Corp.*, No. 06-6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (Carter, J.) (awarding 33% of $9.25 million settlement in wage and hour case and noting that the 33% fee request is "consistent with the norms of class action litigation in this circuit"); *Lyons v. Litton Loan Servicing LP*, No. 1:13-cv-00513-ALC-HBP, slip op. at 2 (S.D.N.Y Aug. 15, 2016.)

---

[3] All unreported slip opinions are submitted in a compendium of cases, which is Exhibit 8 to the Joint Declaration.

(Carter, J.) (awarding 33.3% of $4.121 million settlement in a class action alleging claims regarding lender placed hazard insurance) (Ex. 8).

In sum, an award of 20% would be very comparable to other awards in similar cases.

### C.   The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal–Mart Stores Inc. v. VISA USA Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

Here, Co-Lead Counsel spent more than 3,710 hours of attorney and other professional staff time litigating the case from inception to date. *See* Declaration on Behalf of Pomerantz (Ex. 3-A) and Declaration on Behalf of Labaton Sucharow LLP (Ex. 4-A). Co-Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their current hourly rates, is $2,627,135.50. *Id.* Co-Lead Counsel's lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably comparable skill, experience, and reputation.[4] "[P]erhaps the best indicator of the market rate in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Telik*, 576 F. Supp. 2d at 589; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he

---

[4] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").  Co-Lead Counsel's rates for attorneys here range from $700 to $1,325 for partners and $425 to $875 for other attorneys.  *See* ¶ 79; Exs. 3-A and 4-A.  Sample defense firm rates in 2022, gathered by Labaton Sucharow annually from bankruptcy court filings nationwide, often exceeded these rates.  *See* ¶ 79; Ex. 5.

The requested fee of 20% of the Settlement Fund, *i.e.,* $4,200,000, therefore represents a reasonable multiplier of 1.6 of the total lodestar of Co-Lead Counsel.  A 1.6 "multiplier" is well within the parameters used throughout district courts in the Second Circuit and is additional evidence that the requested fee is reasonable.  Fees representing multiples above a lodestar are frequently awarded to reflect the contingency risk and other relevant enhancement factors.  *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]").

Within the Second Circuit, lodestar multiples greater than 1.6 are regularly awarded.  *See, e.g., Walmart Stores Inc.*, 396 F. 3d at 123 (upholding a multiplier of 3.5 as reasonable on appeal); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347, 353 (S.D.N.Y. 2014) (awarding 25% of $45.9 million settlement, equating to multiplier of 5.2); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier "falls well

within the parameters set in this district and elsewhere"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (multiplier of 3.47); *Christine Asia Co., Ltd., et al., v. Jack Yun Ma, et al.*, No. 15-md-02631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (approving multiplier of approximately 2.15, which the Court found to be "well within the range commonly awarded in securities class actions of this complexity and magnitude").

Additional work will be required of Co-Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms. However, Co-Lead Counsel will not seek payment for this additional work.

For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

## II.  THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that Co-Lead Counsel's requested fee would be reasonable under the circumstances before the Court.

### A.      Co-Lead Counsel Have Devoted Significant Time and Labor to the Action

The substantial time and effort expended by Co-Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee.  As set forth in greater detail in the Joint Declaration, Co-Lead Counsel, among other things:

- conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of JA Solar filings with the SEC and public reports concerning JA Solar in both English and Chinese; interviews with former employees and other potential witnesses with relevant information; and consultation with experts (¶ 15);

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 108-page Complaint, which asserted claims against all Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act (¶¶ 16-18);

- researched and drafted the opposition to Defendants' Motion to Dismiss (¶ 19);

- briefed an appeal of the Court's dismissal of the case (¶ 21);

- successfully moved for an indicative ruling based upon newly discovered evidence (¶ 22);

- successfully briefed and argued, before the Second Circuit, a motion to remand the appeal to the Court to allow it to consider the newly discovered evidence (¶ 22);

- successfully moved for relief from judgment based upon the newly discovered evidence (¶ 24);

- briefed whether the Second Circuit has jurisdiction to hear the Defendants' appeal of the decision granting relief from judgment, which was pending when the Settlement was reached (¶ 24);

- drafted a motion for leave to file a second consolidated amended complaint based upon the newly discovered evidence (including the proposed SAC), which was pending when the Settlement was reached (¶ 25);

- engaged in two mediation sessions, separated by over two years, overseen by a highly experienced third-party mediator, which involved an exchange of written submissions concerning the facts of the case, liability and damages, two full-day formal mediation sessions, and extensive consultation with the mediator following the mediation sessions (¶¶ 26-27);

- negotiated a detailed confidential settlement term sheet with Defendants' counsel, which was executed on December 1, 2022 (¶ 28);

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel (¶ 29);

- worked with a damages expert to craft a plan of allocation that treats Co-Lead Plaintiffs and all other members of the proposed Settlement Class fairly (¶ 65);

- drafted the Preliminary Approval Motion and supporting papers; (¶ 29);

- oversaw the implementation of the notice process (¶ 76); and

- drafted the Motion for Final Approval and supporting papers (¶ 76).

In connection with this work, Co-Lead Counsel expended more than 3,710 hours with a lodestar value of $2,627,135.50.  *See* Exs. 3-A; 4-A.  At all times, Co-Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.  Accordingly, it is respectfully submitted that the time and labor dedicated to the Action support the fee request.

### B.  The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the fee request.  Courts regularly recognize that securities class action litigation is "notably difficult and notoriously uncertain."  *City of Providence,* 2014 WL 1883494, at *5; *In re Signet Jewelers Ltd. Sec. Litig.,* No. 16 cv 06728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("securities class actions are generally complex and expensive to prosecute").

As detailed throughout the Joint Declaration, the Action raised difficult issues concerning—among other things—falsity, reliance and scienter both with respect to the Complaint and efforts surrounding the SAC.  ¶¶ 31-49.  This is in addition to the complicated issues with respect to the central theory of loss causation – that investors were induced to sell JA Solar Securities for less than fair value based upon Defendants' misrepresentations—in contrast to the more standard securities fraud claim that investors *bought* a company's stock at *inflated*

prices.   ¶ 37.   Prosecuting the class's claims required expertise, skill and dedication, from extensive expert analysis on issues related to damages issues, to briefing the appeal with respect to the Motion to Dismiss, and in connection with proceedings related to the newly discovery evidence.   Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable.   *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### C.   <u>The Risks of the Litigation Support the Requested Fee</u>

The risk of litigation is one of the most important Goldberger factors."   *In re Signet Jewelers*, 2020 WL 4196468, at *19.   "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."   *Comverse*, 2010 WL 2653354, at *5; *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take [contingent-fee] risk into account in determining the appropriate fee.").

The most immediate risks faced by the Settlement Class are related to Co-Lead Plaintiffs' pending motion for leave to file the proposed SAC, Defendants' future motion to dismiss if Plaintiffs are allowed to file the SAC, and Defendants' pending appeal of the Court's Order granting Plaintiffs relief from judgment. Even if Plaintiffs prevailed in all of these steps, the Parties would then face a lengthy and expensive discovery process, briefing of class certification and summary judgment motions, trial, and further appeals – a process that would extend for years and might lead to a smaller recovery, or no recovery at all.   The contours of the ultimate class and actionable misstatements could have compromised Co-Lead Plaintiffs' ability to succeed at trial and obtain a larger judgment for the class.   *See In re Bayer AG Sec. Litig.*, No. 03-1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting the "difficulty of

establishing loss causation [] and the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards").

In the face of these many uncertainties, Co-Lead Counsel pursued the claims on a wholly contingent basis, knowing that the litigation would require the devotion of substantial time and expense with no guarantee of compensation. ¶¶ 86-88. Co-Lead Counsel's assumption of this contingency fee risk strongly supports the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

### D.    The Quality of Co-Lead Counsel's Representation

The quality of the representation by Co-Lead Counsel is another important factor that supports the reasonableness of the requested fee. Co-Lead Counsel respectfully submit that this quality is best evidenced by the progress of the litigation and the result achieved. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, MDL No. 05-1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Co-Lead Counsel are nationally recognized leaders in the field of securities class action litigation and have substantial experience litigating and trying securities class actions in courts throughout the country. ¶ 89; Exs. 3-C; 4-D. The attorneys who were principally responsible for prosecuting this case relied upon their skill to develop and implement sophisticated strategies to overcome myriad obstacles raised throughout the litigation.

The quality of Co-Lead Counsel's representation is further demonstrated by the fact that the substantial recovery was obtained after opposing an aggressive defense by highly skilled attorneys at Skadden, Arps, Slate Meagher & Flom LLP. Courts recognize that the strength of Co-Lead Counsel's opposition should be considered in assessing its performance. *See, e.g.*,

*Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% fee award was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

### E. The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in Section I, *supra*, the requested fee is within the range of percentage fees that Courts within the Second Circuit have awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

### F. Public Policy Considerations Support the Requested Fee

A strong public policy favors rewarding firms for bringing successful securities litigation. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). This factor supports Co-Lead Counsel's fee and expense application.

14

**III.    THE REACTION OF THE SETTLEMENT CLASS TO DATE
         SUPPORTS THE REQUESTED FEE**

The reaction of the Settlement Class to date also supports the fee request.  Through June 6, 2023, the Claims Administrator has mailed 23,087 copies of the Notice and Claim Form ("Notice Packet") to potential Settlement Class Members and nominees informing them that, among other things, Co-Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33.4% of the Settlement Fund and up to $500,000 in Litigation Expenses.  *See* Declaration of Lance Cavallo Regarding (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date, dated June 7, 2023 ("Initial Mailing Decl."), Ex. 1 at ¶ 8 and Ex. A thereto.  While the time to object to the Fee and Expense Application does not expire until June 22, 2023, to date no objections have been received.  Co-Lead Counsel will address any that are submitted in their reply papers, which will be filed on or before July 6, 2023.

Additionally, the requested fee of 20% is made with the full support of Co-Lead Plaintiffs.  *See* Ex. 6 (Declaration of Bernard Delattre on Behalf of Altimeo Asset Management) and Ex. 7 (Declaration of Hilary Shane on Behalf of ODS Capital LLC).  Co-Lead Plaintiffs' endorsement of the fee supports its approval.  *See Veeco*, 2007 WL 4115808, at *8 ("[P]ublic policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request[.]").

**IV.    CO-LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
         NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

Co-Lead Counsel's fee application includes a request for payment of their Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action.  Co-Lead Counsel incurred $178,970.61 in total.  *See* Ex. 3-B; 4-B; Joint Decl. at § VI(B). These expenses

are detailed in counsel's individual fee and expense declarations. *Id.* This amount is below the $500,000 cap set forth in the Notice.

In addition to incurring expenses directly, Co-Lead Counsel maintained control over the primary expenses in the Action by managing a joint litigation fund ("Litigation Expense Fund" or "Litigation Fund"). Labaton and Pomerantz collectively contributed approximately $51,830.00 to the Litigation Expense Fund, which incurred $91,339.97 in expenses. *See* Ex. 4-D. A description of the expenses incurred by the Litigation Fund by category is included in the individual firm declaration submitted on behalf of Labaton. *See* Ex. 4 at ¶ 6 and Ex. D thereto. The Litigation Fund has an unused balance in the amount of $12,320.78. Upon the Court's approval, this balance will be retained by Labaton and accordingly Labaton is seeking less than its initial contribution to the Litigation Fund. *See Id.*

Co-Lead Counsel have incurred expenses related to, among other things, expert and consultant fees, the investigation, and mediation fees. The expense items are recorded separately by Co-Lead Counsel, and such costs are not duplicated in the firm's hourly rates. It is respectfully submitted that the expenses are properly recoverable by counsel. *See In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

The largest expense relates to the retention of experts. These fees total $65,325 or approximately 36.5% of the total Litigation Expenses. ¶ 100; Ex. 3-B, 4-C. Principally, Co-Lead Counsel consulted with experts in the fields of n the fields of (i) Valuation/Chinese mergers and acquisitions, and (ii) market efficiency, loss causation and damages. Co-Lead Counsel

utilized these experts in connection with preparing the complaints, in preparation for mediation, and in connection with the development of the proposed Plan of Allocation. These experts were essential to the prosecution of the Action. *Id.*

Another large component of expenses, $26,674.51, or approximately 14.9% of the total expenses, was expended on an outside investigation firm that assisted with developing information for the amended complaints, particularly from sources in China.  ¶ 101; Ex. 4-C. Co-Lead Counsel also incurred fees totaling $15,734.16, or approximately 8.8% of the total expenses, in connection with the two mediation sessions and discussions facilitated by Mr. Meyer. ¶ 102; Ex. 4 at ¶6(b).

The other Litigation Expenses for which Co-Lead Counsel seek payment are the types of expenses that are necessarily incurred in complex international litigation and routinely paid by clients in non-contingent cases.  These Litigation Expenses included, among other things: (i) the use of online research databases to research many of the factual allegations alleged in the complaints and to research and support Plaintiffs' legal arguments; (ii) court costs; (iii) appellate briefing costs; (iv) duplicating; (v) postage and delivery expenses, (vi) work-related transportation and meals; (vi) and translation costs.  ¶¶ 103-104.

## V.     CO-LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REQUESTED REIMBURSEMENT UNDER 15 U.S.C. §78u-4(a)(4)

Co-Lead Counsel also seek reimbursement of $60,000 and $60,000 on behalf of Co-Lead Plaintiffs, Altimeo and ODS, respectively, directly related to their representation of the class. *See* Ex. 6 at ¶¶ 4 and 6-8; Ex. 7 at ¶¶ 8-12.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).  Indeed, "Courts in this Circuit routinely award such costs and expenses both to

reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *22.

Here, as detailed in the Declarations of Co-Lead Plaintiffs, Co-Lead Plaintiffs have been committed to pursuing the class's claims over the past four years—and have taken an active and diligent role in so doing.  Among other things, Altimeo — an institutional asset manager — through its senior managers (a) reviewed all of the pleadings and briefing filed in the Action; (b) regularly consulted with Co-Lead Counsel regarding the progress of and strategy for the case; (c) compiled its trading data and completed its certification in connection with its motion to be appointed Co-Lead Plaintiff; (d) conferred with Co-Lead Counsel regarding the mediations and settlement negotiations; (e) and evaluated and approved the proposed Settlement with Defendants and the plan of allocation. These efforts provided a significant benefit to the Settlement Class given the expertise of Altimeo's senior managers and their deep knowledge of the going-private transaction for JA Solar that was at the center of this litigation. Altimeo estimates that its senior managers devoted 250 hours total to these tasks. Based on their knowledge and experience as senior finance professionals, their time is worth over $500 per hour, but Altimeo is requesting that it be compensated $60,000 for these efforts, which comes out to a reduced rate of $240 per hour for the time that its senior managers spent on this matter. *See* ¶108 and Ex. 6 at ¶ 8.

Likewise, as set forth in its declaration, ODS has been committed to pursuing the class's claims since it filed the initial complaint in the Action in January 2019.  Ms. Shane has an undergraduate degree in economics from Princeton University, and a Ph.D. in finance from The

Wharton School, and applied her knowledge and experience to this case throughout its different stages – from the initial inception of the case and development of the theory of liability through the development of the Settlement and, particularly, the plan of allocation. *See* Ex. 7 at ¶ 9. As attested to, Ms. Shane (a) provided valuable contributions to the development of the core case theory given her advanced degree in finance and experience with issues concerning mergers and appraisal rights; (b) had regular in-person, telephonic, and written communications with counsel concerning the Action; (c) remained fully informed regarding case developments; (d) carefully read and analyzed all court filings over the span of this four year litigation; and (e) closely monitored and participated in all stages of the settlement discussions and documentation. *Id*. at ¶ 4.  Altogether, Ms. Shane conservatively estimates that she spent more than 60 hours working on the case.  *Id*. at ¶ 12.  Her effective hourly rate exceeds $1,000 per hour.  She is therefore requesting that Lead Plaintiff ODS be compensated in the amount of $60,000.  Ex. 7 at ¶¶ 11-12.

These litigation efforts required representatives of Co-Lead Plaintiffs to dedicate time and resources to the Action that they would have otherwise devoted to their regular duties. Courts within this District have approved payments to compensate representative plaintiffs under similar circumstances.  *See, e.g., In re Bank of Am. Corp. Sec., Derivative & ERISA Litig*., 772 F.3d 125, 132-134 (2d Cir. 2014) (affirming over $450,000 award to representative plaintiffs for time spent by their employees); *In re Petrobras Sec. Litig.,* 317 F. Supp. 3d 858, 879 (S.D.N.Y. 2018) (awarding institutional lead plaintiffs $300,000, $50,000, and $50,000); *In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *24  (awarding $25,410 to lead plaintiff); and *In re Silvercorp Metals Inc. Sec. Litig.,* No. 12-cv-09456-JSR, slip op. at 9 (S.D.N.Y. Feb. 13, 2015) (awarding two individual lead plaintiffs $12,500 each) (Ex. 8).

## CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 20% of the Settlement Fund, which includes accrued interest; $178,970.61 in Litigation Expenses incurred by Co-Lead Counsel, plus accrued interest; and $60,000 to Co-Lead Plaintiff ODS and $60,000 to Co-Lead Plaintiff Altimeo pursuant to the PSLRA.  A proposed order will be submitted with Co-Lead Counsel's reply papers, after the deadline for objecting has passed.

Dated:  June 8, 2023

Respectfully submitted,

**POMERANTZ LLP**

/s/ *Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com

*Counsel for Co-Lead Plaintiff*
*Altimeo Asset Management*
*and Co-Lead Counsel for the Class*

**LABATON SUCHAROW LLP**

/s/ *Carol C. Villegas*
Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
dschwartz@labaton.com
jbissell-linsk@labaton.com

*Counsel for Co-Lead Plaintiff*
*ODS Capital LLC, and*
*Co-Lead Counsel for the Class*

**THE LAW OFFICE OF**
**JO ANN PALCHAK, P.A.**
Jo Ann Palchak
1725 1/2 7th Ave.,
Suite 6 Tampa, FL 33605
Telephone: (813) 468-4884
Email: jpalchak@palchaklaw.com

*Counsel for Co-Lead Plaintiff*
*ODS Capital LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

/s/ *Michael Grunfeld*
Michael Grunfeld